**Valmore Joseph GAUDETTE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 12–84–0128–CR, 12–84–0129–CR.**

Court of Appeals of Texas,
Tyler.

June 30, 1986.

Rehearing Denied August 7, 1986.

Paul Tatum, Nacogdoches, Edith L. James, Austin, for appellant.

Herbert Hancock, Dist. Atty., Nacogdoches, for appellee.

COLLEY, Justice.

On March 30, 1984, the grand jury of Nacogdoches County returned two indictments against Valmore Joseph Gaudette, charging that on March 7, 1984, he committed the offenses of aggravated sexual assault and aggravated kidnapping of G.B., a female, who at the time of the alleged offense was fifteen years of age. The cases were consolidated and tried before a jury who convicted Gaudette of the offenses and assessed his punishment in each case at life imprisonment and a $10,000 fine. Gaudette urges eight grounds of error. We affirm.

The evidence reveals that Gaudette abducted G.B. on March 7, 1984, at about 3:30 p.m., forcing her into his automobile after he accosted her as she walked along State Highway No. 259 in Nacogdoches County. Gaudette drove to a secluded location where he forced G.B. to remove her clothing. He tied her hands and feet together and had sexual intercourse with her. He then returned her to a location on the highway near the place where he abducted her. According to G.B.'s testimony, Gaudette had a pistol in the waistband of his trousers when she first saw him on the highway. She testified he threatened that

"he'd blow a hole in my stomach or head ... if I'd [sic] didn't get in the car." G.B. testified that about a week before the assault occurred, while she was walking along the same highway, Gaudette had stopped her and asked her for directions. She also testified that Gaudette stopped her a day or so later to thank her for giving him the earlier aid.

On March 18, 1984, Dan Norton, a hypnotist, interviewed G.B. at the request of law enforcement officers. Norton testified at trial that the main objective of the hypnosis session was to aid the victim in her recall of the vehicle and its registration plate numbers and secure a more comprehensive description of her assailant. He stated that he had a pre-interview session with G.B. alone to acquaint her with the character and purposes of the hypnosis interview. Norton further testified that the interview was taped and was conducted in the presence of Deputy Sheriff Bill Ball and Debra McKee, Criminal Investigator for the Nacogdoches District Attorney's Office. We have heard the tape.[1] While the questions asked by Norton during the interview were audible, G.B.'s responses were not. At the time of the interview, no photograph of Gaudette was available and his identity was unknown. Norton did not testify concerning the responses made by G.B. during the hypnosis session.

On March 19, 1984, Deputy Ball conferred with Don Barlow, Chief of Police of the city of Nacogdoches, about the offenses. During the course of that conversation, Ball apparently repeated the description given by G.B. of the perpetrator of these crimes and the vehicle used, as well as a description of clothing belonging to the rapist. Coincidentally, Barlow's mother owned and operated certain rental properties, in one of which Gaudette lived with his wife. Barlow knew Gaudette and was familiar with the vehicle owned by

him. Obviously, the description given by G.B. of her assailant, his car and clothing matched Gaudette, his vehicle, and particularly a green army jacket worn by him on occasions.

On Chief Barlow's suggestion, Investigator McKee photographed Gaudette using a telescopic lens. On March 19, G.B. was shown a picture spread of six males, including a photo of Gaudette. G.B. identified Gaudette as her attacker. On the same date a warrant was issued for Gaudette's arrest. Barlow then went to Gaudette's residence and asked him to run an errand which required Gaudette to drive his car toward Nacogdoches to a store to buy some electrical equipment. While on this mission, Gaudette was stopped by the police and arrested. He was taken to the Nacogdoches County Jail and placed in a one-man cell.

On March 20, 1984, at Gaudette's request, his wife Lauren was permitted to visit him at the sheriff's office. Following this visit, Barlow discussed the "incident" with him and Gaudette orally confessed that he had committed the offenses. He led the officers to the scenes of the abduction and sexual assault, and agreed to sign a written statement. On the next day, March 21, 1984, Gaudette signed a confession in the presence of Ball, Barlow and McKee. The record discloses that as Gaudette described the events of March 7, McKee typed what he said. Gaudette read the statement before he signed it. The statement amounts to a confession of sexual assault and kidnapping of the victim, but does not contain any admissions that a firearm was used before, during or after the commission of the offenses.[2]

Gaudette attacks his conviction, claiming under his first ground of error that a fatal variance exists between the allegations in the indictments[3] and the State's proof at

---

1. No written transcript of the tape was made for inclusion in the record.

2. Neither does the confession contain a denial that a firearm was used or exhibited.

3. The indictment in our Cause No. 12–84–0128–CR (Trial Cause No. 1,389–84–3) contains two counts, the first count charged aggravated sexual assault. Omitting the formal parts, this count reads in pertinent part, that Gaudette "did then and there intentionally and knowingly cause the

trial. He argues that the proof does not establish that a deadly weapon, specifically a pistol, was used or exhibited in effectuation of the offenses. We disagree.

■ The testimony of the victim was clear and positive that Gaudette possessed a pistol, and that he threatened to use it on her if she failed to comply with his order to get in the car. Further, her testimony is equally clear that Gaudette had the pistol immediately before the sexual assault occurred while she was nude and bound.[4] Gaudette's argument that the evidence is insufficient to support the allegations of the indictment that a pistol was exhibited by him during the commission of the aggravated sexual assault against G.B. and that he threatened to use deadly force against her to effect the abduction of her are without merit. We conclude from our review of the evidence "in the light most favorable to the jury's verdict,"[5] that any rational juror in this case could have found beyond a reasonable doubt all of the essential elements of aggravated sexual assault and aggravated kidnapping. The first ground is overruled.

By grounds two and six, Gaudette contends that pretrial identification procedures, specifically the hypnotic interview and the pretrial photographic line-up, were so impermissibly suggestive as to give rise to a substantial likelihood of misidentification of Gaudette by G.B. at trial, and therefore, the victim's in-court identification of him should be suppressed. This argument is two pronged. He first contends that the in-court identification was the result of improper suggestive and leading questions and techniques employed by Dan Norton[6] during the hypnotic interview of the victim. Gaudette asserts that the record shows that G.B.'s in-court identification of him was induced solely by the suggestive and leading questions of the hypnotist and was not based on her "independent recollection" of the incident or her observation of him before, during or after the commission of the offenses.[7] Gaudette does not quote specific questions from the tape. In essence, his argument is that the victim's post-hypnosis memory regarding the identity of her assailant, as well as certain items of his clothing, specifically a belt buckle, and the "alleged use of a gun" during the course of the criminal episode, were false memories induced by hypnosis.[8]

In *Vester v. State*, 713 S.W.2d 920 (Tex. Cr.App.1986), the Court of Criminal Appeals addressed an identical ground of error. Vester had been convicted of the murder of a male companion of the State's female eyewitness who was raped by Ves-

penetration of the vagina of [G.B.], a child younger than 17 years of age who was not the spouse of the said Valmore Joseph Gaudette, by the penis of the said Valmore Joseph Gaudette, and the said Valmore Joseph Gaudette did then and there exhibit a deadly weapon, to-wit: a pistol, in the course of the same criminal episode."

The indictment in our cause No. 12–84–0129–CR (Trial Court No. 1,390-84-3), omitting the formal parts, reads in pertinent part, that Gaudette "did then and there intentionally and knowingly abduct another person, to-wit: [G.B.] and without [G.B.'s] consent did then and there restrain [G.B.] with intent to prevent the liberation of [G.B.] by threatening to use deadly force on [G.B.] and the said Valmore Joseph Gaudette did then and there intentionally and knowingly abduct the said [G.B.] with the intent to violate and abuse sexually the said [G.B.]."

In both indictments the State alleged a prior final aggravated rape conviction to enhance punishment.

4. The victim testified that Gaudette had taken the pistol "out of his waist band and he had clicked [sic] it at the ground and then he had thrown it down."

5. *Hudson v. State,* 675 S.W.2d 507, 509–510 (Tex.Cr.App.1984).

6. Dan Norton apparently is a trained hypnotist although the record does not reveal his qualifications.

7. Gaudette's only knowledge of the contents of the tape was apparently acquired by his trial counsel who listened to the tape.

8. He also submits a litany of legal standards relating to the qualifications of the hypnotist, the environment of the pre-interview session, as well as the hypnosis interview itself and quotes a number of so-called scientific guidelines of unrevealed sources for conducting the interview of a person placed in a "hypnotic trance."

ter immediately after the murder victim was shot. The witness (called prosecutrix in the opinion) identified Vester as the murderer after viewing a photographic spread. Subsequently, she was hypnotized, and while in a "hypnotic state," again, after viewing a group of pictures of suspects, identified Vester as the murderer and "her rapist." The *Vester* court stated that the petition for discretionary review in the case [9] asked the court to consider whether "the Court of Appeals erred in holding that the prosecutrix's in-court identification was of independent origin and not as a result of hypnotically-induced testimony resulting from unnecessarily suggestive pre-trial identification procedures." After reviewing the evidence, the Court of Criminal Appeals applied the tests enunciated by the United States Supreme Court for determination of the admissibility of in-court identification [10] and affirmed the Amarillo court's decision. In so doing, the Court of Criminal Appeals concluded that the evidence and circumstances shown by the record before it demonstrated "that the pre-trial identification process was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Furthermore, the record reveals clear and convincing evidence that the prosecutrix's in-court identification was of independent origin...." [11]

■ In the case before us, the hypnotic session took place before the out-of-court identification of Gaudette by G.B. But as noted earlier herein, no photograph of Gaudette was available at the time of the interview, and his identity was unknown. Listening to the tape we were able to hear and understand each question propounded by Norton to G.B. during the hypnotic inter-

view, but most of her responses were unintelligible because of tape noises and the low intensity of her vocalizations. The record shows that the details inquired about by the hypnotist during the interview—the description of Gaudette's car, his general personal characterization, and his clothing—had previously been given to the investigating officers by the victim. In our view, Norton's questions during the interview were not overly leading or suggestive as to the identity of G.B.'s assailant; indeed, no identification of G.B.'s assailant was obtained by virtue of the interview. [12]

The second prong of Gaudette's attack on G.B.'s identification assails the photograph. At the request of the investigating officer, on the day after the hypnotic interview, Investigator McKee photographed Gaudette using a camera equipped with a "zoom lens." The print was placed with five other mug shots and shown to G.B. The other five photographs were larger than the picture of Gaudette and were "glossy" prints, whereas the photograph of Gaudette was not "glossy." Gaudette does not contend that improper or suggestive words or conduct was employed to influence G.B.'s identification of Gaudette, but only argues that because the photograph of Gaudette was smaller and of a different texture, the photographic "line-up" was impermissibly suggestive.

■ No hard and fast rule has been adopted by the United States Supreme Court to determine due process issues regarding pretrial identification by means of photographs of suspects. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The determination is properly made on a case-by-case basis, and a conviction will be only set aside only "if

---

9. To review the judgment of the court of appeals affirming Vester's conviction. *Vester v. State*, 684 S.W.2d 715 (Tex.App.—Amarillo 1983).

10. *Manson v. Brathwaite*, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188 (1972); *Simmons v. U.S.*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Gilbert v. California*, 388 U.S. 263, 272 (1967); and *U.S. v. Wade*, 388 U.S. 218, 242, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967).

11. Apparently the "pre-trial identification process" included the so-called photographic display shown to Vester both before and after the hypnotic session.

12. No photographs of Gaudette were obtained until March 19, 1984, when Chief Barlow was first informed of the description of G.B.'s assailant, his clothing and vehicle.

the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification [at trial]." *Id.* at 394, 88 S.Ct. at 976. *See also Stovall v. Denno,* 388 U.S. 293, 301–302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). In this case, G.B. had been face to face with her assailant on two occasions preceding the date of the offenses. During the commission of the offenses she was obviously afforded an opportunity in broad daylight to observe Gaudette at close quarters for more than an hour. Her initial description of Gaudette, his clothing and his vehicle, given on March 7, 1984, was accurate. Her in-court identification of Gaudette was positive and unequivocal. Under the record, we conclude that neither the hypnotic interview nor the pretrial identification by means of the photographic display, considered alone or in combination, offended Gaudette's due process rights. Grounds two and six are overruled.

■ Gaudette contends by grounds three and five that his confession was coerced by promises of "leniency" and "psychiatric help" and by "illegal detention." Suffice it to say that while Gaudette testified [13] that Barlow advised him that he would try to secure some help for him, Barlow testified positively that no promises were made to Gaudette before the confession was signed. The trial judge as the trier of the fact chose to believe Barlow and found that the confession was voluntarily given and that Barlow waived his right to counsel. Although Gaudette testified that he twice asked for a lawyer before he signed the confession, Barlow denied that Gaudette ever requested a lawyer. The record shows that when Gaudette was arrested he was placed in a one-man cell in the Nacogdoches County Jail at his own request. He was not held incommunicado. He was arrested on March 19 and his wife was permitted to visit him outside of visiting hours on the next day. Gaudette's arrest was made under the authority of an unchallenged warrant. We conclude that under this record the trial court properly held the confession admissible and voluntary. Grounds three and five are overruled.

■ By his fourth ground of error Gaudette claims that the court erred in refusing, over his objection, to submit the lesser included offenses of kidnapping and sexual assault. The court in fact did submit the lesser included offense of sexual assault, but did not submit the lesser offense of kidnapping, hence, we address only the complaint that no charge was submitted on kidnapping. Gaudette's ground of error specifically alleges that such action constitutes reversible error "because the evidence raised a clear issue whether any gun was used." Gaudette's entire argument under the ground is devoted to a discussion of two cases [14] where the questions on appeal were whether the evidence supported a conviction for aggravated rape under former Tex.Penal Code § 21.03 [15] as it read before the 1981 amendments thereto. The cited cases do not support the ground here asserted respecting the lesser offense of kidnapping. The offense of kidnapping is committed if a person "intentionally and knowingly abducts another person." Tex.Penal Code Ann. § 20.03 (Vernon 1974).[16] As relevant here, the offense of aggravated kidnapping is committed if a person "intentionally or knowingly abducts another person with intent to ... violate or abuse [her] sexually." Section 20.04.[17] The Court of Criminal Appeals

**13.** At a Jackson-Denno hearing.

**14.** *Rogers v. State,* 575 S.W.2d 555 (Tex.Cr.App. 1979); and *Blount v. State,* 542 S.W.2d 164 (Tex. Cr.App.1976).

**15.** Act of June 14, 1973, ch. 426 § 1, 1973 Tex. Gen.Laws 883, 916 *amended by* Act of April 30, 1981, ch. 96, §§ 1 and 2, 1981 Tex.Gen.Laws 203, *repealed by* Act of June 19, 1983, ch. 977, § 12, 1983 Tex.Gen.Laws 5311, 5321.

**16.** All references to "sections" are to Tex.Penal Code Ann. unless otherwise noted.

**17.** *See also* § 20.01 which defines "abduct" as meaning restraining a person with intent to prevent his liberation by "(B) using or threatening to use deadly force."

has held that kidnapping is a lesser included offense of aggravated kidnapping. *Rogers v. State*, 687 S.W.2d 337, 344 (Tex. Cr.App.1985). However, whether a charge on the lesser included offense is required depends upon the evidence in the case. We have inspected the record to determine whether there is any evidence from any source, however weak, before the jury in this case that if Gaudette is guilty of kidnapping, that he is guilty only of kidnapping and not aggravated kidnapping. *Id.; see also Royster v. State*, 622 S.W.2d 442 (Tex.Cr.App.1981). Gaudette was charged with aggravated kidnapping, and the aggravating element under section 20.04 was the abduction of G.B. with the intent to "violate or abuse her sexually." [18] We find no evidence, from any source whatever, showing or tending to show that Gaudette abducted G.B. but did not sexually abuse her. The use of deadly force is an essential element of both kidnapping and aggravated kidnapping. Thus, before the jury could convict Gaudette of aggravated kidnapping, it was required to find from the evidence beyond a reasonable doubt that Gaudette used a deadly weapon, hence deadly force [19] to restrain G.B. "with the intent to prevent [her] liberation" and with "intent to: ... violate or abuse [her] sexually." Ground four is overruled.

Gaudette alleges by ground seven that the court erred in failing to suppress certain evidence, to wit: a vaseline jar and shotgun shells removed from a pocket of a jacket owned by Gaudette that was surrendered to Chief Barlow by Gaudette's wife, Lauren Gaudette. The record reveals that following Gaudette's arrest, Barlow went to Gaudette's home and advised Lauren Gaudette that her husband had been arrested for aggravated sexual assault and aggravated kidnapping. Barlow testified that Lauren Gaudette consented to a search of the house. However, Barlow further related that after he informed Lauren Gaudette that a green Army jacket was reported to have been worn by Gaudette at the time of the offenses, Lauren Gaudette "went into a room in the back of the house and gave me a green jacket that fit the description of the one that Bill Ball [the principal investigator in this case] had given me." Barlow testified that a vaseline jar and shotgun shells [20] were found in the pockets of the jacket. Lauren Gaudette testified that she gave the jacket to Barlow. No search of the premises was involved respecting the jacket or the contents thereof. The record shows that Lauren Gaudette was not in any way intimidated by Barlow's conduct. He was, as characterized by her own testimony, a friend, and when he asked for the jacket, she got it and gave it to him. We conclude that no Fourth Amendment rights of Gaudette were violated. The ground of error is overruled.

By his last ground of error, Gaudette contends that the court erred in overruling his motion for mistrial because of the following questions and answers propounded to and answered by State's witness Bill Ball:

Q All right. Bill, was—could you classify Valmore Joseph Gaudette as being a talkative individual once he got started talking?

A Well, I don't know.

Q Okay. Did he talk to you quite a bit once he started talking?

A Yes.

Q And visit with you? Did he tell you about his past?

A Yes, sir.

Q Was his past interesting to ya'll?

A Yes, sir.

Immediately following this testimony, Gaudette objected in the following language, to wit:

---

18. This is the aggravating element in this case which distinguishes kidnapping from aggravated kidnapping.

19. *See Phillips v. State*, 597 S.W.2d 929, 934 (Tex.Cr.App.1980).

20. State's Exhibits Nos. 6 and 7. G.B. testified that Gaudette used vaseline during the sexual assault.

MR. TATUM: Judge, I'm going to object to same and instruct the jury to be [sic] disregard the comment that it would be interesting to them.

The objection was sustained, and the court in appropriate language instructed the jury to disregard the questions and answers above quoted. We conclude that these instructions cured any error and that the court did not err in overruling the motion for mistrial. *Warren v. State,* 514 S.W.2d 458, 463 (Tex.Cr.App.1974). Ground eight is overruled.

The judgment is affirmed.