NO. 07-02-0357-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 9, 2003

_____

TERRY BOLTON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-438843; HONORABLE JIM BOB DARNELL, JUDGE

_____

Before QUINN and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION[1]**

Following a plea of not guilty, appellant was convicted by a jury of attempted burglary of a habitation with intent to commit sexual assault, and punishment was assessed by the court at 20 years confinement. Presenting a sole issue, appellant asserts

_____

[1]Tex. R. App. P. 47.2(a).

the evidence is insufficient to support his conviction. Based upon the rationale expressed herein, we affirm, but reform the judgment and reverse and remand for a new trial on punishment.

At approximately 10:00 p.m. on January 6, 2002, Ramiro Reyna was walking from his home to his mother's home situated one block over when he observed a "suspicious person" walking through complainant's backyard. A street light on the corner lot where complainant's house was located provided some light. Reyna knew that complainant and her mother were the only residents. He observed the person, later identified as appellant, "just peeping" through the kitchen window and later another window. However, Reyna also testified that an 18-wheeler was parked on the curb to the side of the house that night and from where he was standing initially, the truck was between him and appellant and he was only able to observe the back of appellant's legs. As Reyna proceeded down the block undetected by appellant, he again observed appellant "peeping" through a window holding his right hand next to his face. Reyna was unable to see appellant's left hand. Once Reyna reached his mother's house, four houses down from complainant's, he called the police.

Reyna testified he was inside his mother's house for three to five minutes after calling the police. He then waited in his mother's backyard where he could still observe complainant's backyard through other neighbors' gates. Although he could not see appellant, he believed he was still standing by a window in complainant's backyard until he

2

noticed him return to the backyard from a business parking lot located across the alley from complainant's house. Reyna's mother waited for the police in her front yard and, upon Officer Jordan's arrival, alerted him to appellant's location. Reyna observed Jordan's patrol car drive down the alley where Jordan apprehended appellant behind a neighbor's house adjacent to complainant's.

Complainant testified she turned on her bath water, undressed in the bathroom, and took her clothes to the laundry room. She then walked to her mother's room to answer the telephone before returning to the bathroom to take a bath. According to complainant, she bathed for approximately an hour.

Officer Jordan testified he was dispatched to investigate a burglary in progress. According to his testimony, he drove down the alley with the headlights and parking lights turned off and observed appellant exiting complainant's backyard and walking toward his patrol car. Jordan was of the opinion that appellant was unaware of his presence and was walking at a normal pace while looking back in the direction of complainant's house. When Jordan was close enough, he turned on his headlights, stopped the patrol car and exited, and instructed appellant to get down on the ground. After handcuffing appellant, Jordan conducted a protective frisk and discovered an open jar of petroleum jelly in appellant's pocket. The officer also noticed that appellant was wearing camouflage pants that were unbuttoned and unzipped.

Appellant's sole contention is that the evidence is legally and factually insufficient to support his conviction for attempted burglary of a habitation with intent to commit sexual assault. We agree. When both the legal and factual sufficiency of the evidence are challenged, we must first determine whether the evidence is legally sufficient to support the verdict. Clewis v. State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996). It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2003); Tex. Pen. Code Ann. § 2.01 (Vernon 1994). In conducting a legal sufficiency review, we examine the verdict, after viewing the evidence in the light most favorable to the prosecution, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 157 (Tex.Cr.App. 1991), *overruled on other grounds*, Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000). As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a "mere modicum" of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988). The standard of review is the same for direct and circumstantial evidence cases. Butler v. State, 769 S.W.2d 234, 238 (Tex.Cr.App. 1989), *overruled on other grounds*, *Geesa*, 820 S.W.2d at 161.

After conducting a legal sufficiency review under *Jackson*, we may proceed with a factual sufficiency review. *Clewis*, 922 S.W.2d at 133. As an appellate court, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Johnson v. State, 23 S.W.3d 1, 9 (Tex.Cr.App. 2000). It is the exclusive province of the jury to determine the credibility of the witnesses and the weight to be given their testimony, and unless the record clearly demonstrates a different result is appropriate, we must defer to the jury's determination. *Id.* at 8.

Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the essential elements the State was required to prove. A person attempts an offense if he commits an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. Tex. Pen. Code Ann. § 15.01(a) (Vernon 2003). Burglary requires a person to enter a habitation without the effective consent of the owner with intent to commit a felony, theft, or an assault. § 30.02(a)(1). A person commits sexual assault if he intentionally or knowingly:

> (A) causes the penetration of the anus or female sexual organ of another person by any means, without that person's consent;
>
> (B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or
>
> (C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor . . . .

5

§ 22.011(a)(1). Intent may be inferred from an accused's acts, words, and conduct. DeLeon v. State, 77 S.W.3d 300, 312 (Tex.App.–Austin 2001, pet. ref'd). In circumstantial evidence cases it is not necessary that every fact point directly and independently to the accused's guilt; rather, it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex.Cr.App. 1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994); Armstrong v. State, 958 S.W.2d 278, 283 (Tex.App.--Amarillo 1997, pet. ref'd).

The State established appellant was in complainant's backyard without permission and was peeping through more than one window. The arresting officer testified appellant possessed an open jar of petroleum jelly in his pocket and that his camouflage pants were unbuttoned and unzipped. Complainant and her mother testified the window to complainant's room showed new damage because the bottom right corner of the screen was pulled up, and the latch hook was missing. Complainant also testified she had seen appellant before when she and her friends were walking to a nearby grocery store and noticed appellant following them. She explained that when she turned back to look he stopped and she did not see him again. However, the State did not establish a time frame between that occurrence and the incident on January 6.

Officer Jordan testified he was not trained in crime scene investigation and that other officers present were also inexperienced in crime scene investigation. He estimated he was at the scene for 30 minutes; however, no photographs, fingerprints, footprints, or

6

measurements were taken. He further testified neither he nor his fellow officers found any weapons or tools on appellant.

Complainant testified that while she was bathing she did not hear anything outside the window. She further testified she did not see appellant at any of her windows nor elsewhere, nor did she witness him attempt to pull the screen away from the window. According to complainant, she inspected her window every other day when taking out the trash and acknowledged the window was locked on the night of the incident and very difficult to open.

The defense established the window screen was old and dark from rust, and the window frame was broken. No evidence was presented that appellant pulled up the screen or caused any damage to the window.[2] In fact, the only eye witness, Reyna, testified on direct and redirect examination as follows:

Q. Whenever you saw [defendant] there at that point, what was he doing?
A. Just peeping through the window.

\* \* \*

Q. And as you went by that location, what did you believe the Defendant to be doing?
A. Just peeking through the window.

---

[2]See Perez v. State, 695 S.W.2d 51, 54 (Tex.App.–Corpus Christi 1985, no pet.) (reversing a conviction for attempted burglary and ordering an acquittal because there was no evidence to show beyond a reasonable doubt that the defendant was attempting to enter a building where he used a metal rod to pry brackets that supported an air conditioning unit built into the rear wall of a building).

7

Referencing the record, in its brief the State notes appellant was "clothed in camouflage pants, which are typically worn when one does not want to be seen." However the portion of the record referenced is Officer Jordan's following testimony:

Q.  For instance, do you remember what kind of pants this suspect was wearing?
A.  I do remember that.  He was wearing camouflage BDU's, I believe.

There is no evidence by Officer Jordan or any other witness establishing that camouflage pants are "worn when one does not want to be seen."  Moreover, the State did not argue to the jury, as it does on appeal, that they could reasonably deduce that camouflage clothing is worn by persons who do not want to be seen.

The State also contends it was reasonable for a jury to conclude appellant had a "sexual interest" in complainant because he had previously followed her while she was walking to a grocery store.  However, no evidence was presented of any acts, conduct, or words by appellant to indicate he was sexually interested in complainant.

In support of its final contention that the evidence is sufficient to support appellant's conviction, the State relies on the open jar of petroleum jelly found in appellant's pocket to prove his intent to commit sexual assault.  The State cites six cases in which petroleum jelly was used during sexual crimes; however, all six cases are distinguishable:

Sledge v. State, 953 S.W.2d 253 (Tex.Cr.App. 1997)–a conviction for aggravated sexual assault and indecency with a child in which the dissenting

8

opinion discusses extraneous offenses, specifically an instance where the complainant recalled that defendant rubbed her anus with vaseline and penetrated her;

Jones v. State, 582 S.W.2d 129 (Tex.Cr.App. 1979)–a murder conviction resulting from injuries sustained during a violent sexual assault ;

Mulvehill v. State, 130 Tex.Crim. 335, 395 S.W.2d 647 (1965)–a conviction for indecent exposure to a minor where the defendant used vaseline to grease his penis and place it in the minor's "behind";

Gulley v. State, 94 S.W.2d 461 (Tex.Cr.App. 1936)–a rape conviction involving an underage female who rode with the defendant in his automobile and testified that she consented to engage in sexual relations if the defendant wore a "rubber" and she placed vaseline on her female organ;

Ford v. State, 908 S.W.2d 32 (Tex.App.–Fort Worth 1995, pet. ref'd)–a conviction for aggravated sexual assault of an eight-year-old boy whom the defendant instructed to get vaseline for the defendant to put on his own penis before penetrating the boy anally; and

Gaudette v. State, 713 S.W.2d 206 (Tex.App.–Tyler 1986, pet. ref'd)–a conviction for aggravated sexual assault and aggravated kidnapping of a minor where a jar of vaseline was found in the defendant's jacket, but without any mention that the vaseline was used in the commission of the sexual assault.

Five of the cases relied upon by the State involve sexual acts against minors and the sixth case was a prosecution for murder resulting from a heinous rape from which the victim sustained fatal injuries. Moreover, no evidence was introduced regarding the amount of petroleum jelly in the jar, if any. The State does not cite, and we have been unable to find any cases holding that possession of a jar of petroleum jelly under the circumstances presented here is sufficient to support a conviction for attempted sexual assault, and we decline to so hold.[3]

---

[3]*Cf.* Johnson v. State, 633 S.W.2d 888, 889 (Tex.Cr.App. 1982) (holding evidence sufficient for attempted rape where the defendant held complainant from behind, pinned

Additionally, when Officer Jordan first observed appellant, he was leaving complainant's backyard and walking down the alley at a normal pace. In summing up the evidence, the State argued in its closing:

> He comes to her house in camouflage, walks through her fence back and forth, back and forth, looking in windows until he finds the exact window that he wants to stand at, the window he has the best view. Hand up, looking in the window, the other one down by his pants.
>
> He gratifies himself, what he wants to do, satisfies himself.

The record does not establish appellant committed an act amounting to more than mere preparation with the intention to enter complainant's house to commit sexual assault. Proof of a culpable mental state generally relies upon circumstantial evidence and may be inferred from the circumstances under which the prohibited act occurred. Dillon v. State, 574 S.W.2d 92, 94 (Tex.Cr.App. 1978); Steinbach v. State, 979 S.W.2d 836, 842 (Tex.App.–Austin 1998, pet. ref'd). However, the circumstances in the underlying case do not establish that through his acts, words, or conduct, appellant had the requisite intent to

---

her arms down, grabbed her private parts, put his hand under her shirt, and grabbed her breast while saying "fuck" in a sensuous manner); Hackbarth v. State, 617 S.W.2d 944, 945 (Tex.Cr.App. 1981) (affirming an attempted rape conviction where the defendant entered a laundromat and ripped at complainant's shirt, asked her to take her clothes off while his partially erect penis was protruding from his unzipped pants, and attempted to undo her pants); Walker v. State, 859 S.W.2d 566, 569 (Tex.App.–Waco 1993, pet. ref'd) (holding evidence sufficient for attempted sexual assault because the defendant's actions constituted more than mere preparation where he ripped the front of complainant's dress, beat her, dragged her into an alley, and touched her in "a personal place"); Lindsey v. State, 764 S.W.2d 376, 377 (Tex.App.–Texarkana 1989, no pet.) (affirming a conviction for attempted sexual assault where complainant's stepfather, the defendant, fondled complainant's breasts, stroked her vaginal area over her clothing, told her she was sexy, stated he "ought to f— her right then," and threatened to kill her if she told anyone).

enter complainant's house to commit sexual assault. Thus, viewing the foregoing evidence in the light most favorable to the prosecution, we conclude it is insufficient for a rational trier of fact to have found beyond a reasonable doubt the elements of the charged offense. Accordingly, we hold the evidence is legally insufficient to support a conviction for attempted burglary of a habitation with intent to commit sexual assault. Having done so, we need not conduct a factual sufficiency review. Appellant's sole issue is sustained.

We must now determine whether the evidence is sufficient to support a conviction for the lesser included offense of criminal trespass. *See* Collier v. State, 999 S.W.2d 779, 782 (Tex.Cr.App. 1999) (en banc) (holding that a court of appeals may reform a judgment of conviction to reflect conviction of a lesser included offense only if (1) the court finds that the evidence is insufficient to support conviction of the charged offense but sufficient to support conviction of the lesser included offense, and (2) the jury was instructed on the lesser included offense). A person commits criminal trespass if he remains on property . . . without the effective consent of the owner and had notice that the entry was forbidden. § 30.05(a)(1). Notice means fencing or other enclosure obviously designed to exclude intruders . . . . § 30.05(b)(2)(B).

Reyna testified complainant's backyard was enclosed by a fence, and he observed appellant walking back and forth in the yard. Officer Jordan testified he observed appellant exiting that same backyard. Complainant and her mother both testified that appellant did not have permission to be in their yard or on their property. We conclude the evidence was

11

sufficient to show appellant had notice that entry onto complainant's property was forbidden and that he remained there without their consent. Thus, the evidence is sufficient to support a conviction for criminal trespass.

Accordingly, the judgment for attempted burglary of a habitation with intent to commit sexual assault is reformed to reflect conviction for the lesser included offense of criminal trespass and, as reformed, is affirmed; that portion of the judgment assessing punishment for the second degree felony of attempted burglary of a habitation with intent to commit sexual assault is reversed and the cause is remanded to the trial court for a new punishment hearing for conviction of the Class B misdemeanor of criminal trespass.

Don H. Reavis
Justice

Do not publish.