COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

MARCUS GLEN WILLIAMS,                             )

                                                                              )              
No.  08-04-00198-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
23rd District Court

THE STATE OF TEXAS,                                     )

                                                                              )          
of Brazoria County, Texas

Appellee.                           )

                                                                              )                     (TC# 44364)

                                                                              )

 

O
P I N I O N

 








Appellant Marcus
Glen Williams was indicted for attempted sexual assault, enhanced by three
prior felony convictions.  Over his not
guilty plea, the jury found Appellant guilty of the offense as charged in the
indictment.  Upon Appellant=s plea of true to the enhancement
paragraphs, the trial court found them to be true and assessed punishment at 15
years imprisonment in the Institutional Division of the Texas Department of
Criminal Justice.  In seven issues,
Appellant contends that:  (1) the trial
court erred in granting the State=s
challenge for cause to three venire persons during voir dire; (2) the evidence
was legally and factually insufficient to sustain his conviction; (3) the trial
court erred in refusing his request for a jury instruction on a lesser-included
offense; (4) the trial court erred in admitting extraneous offense evidence;
(5) at the punishment phase the State improperly admitted details of his prior
convictions that were alleged for enhancement; and (6) the State made an
improper jury argument during its closing argument.  We affirm.

On December 11,
2002, Deborah Morales was living at the Arbors Apartments in Lake Jackson,
Texas with her three children.  That
morning, Ms. Morales took her oldest daughter to school.  As they walked around a corner in the
complex, Ms. Morales saw a black man wearing a knit cap and a checkered blue
and white jacket.  When they got into her
car, Ms. Morales observed that the man was looking around and pacing a little
bit.  She had never seen him before, but
Ms. Morales believed that she got a good look at him.  

When Ms. Morales
returned from taking her daughter to school, about ten minutes later, the man
was still standing near the parking area. 
The man was acting like he was looking for somebody or waiting, moving
around, looking in her direction and then turning away.  Ms. Morales was scared to exit, so she
stayed inside her car.  Ms. Morales
pretended that she was reading a piece of paper in her car and was hoping that
he would leave, but he did not.  Instead,
the man walked to the edge of the sidewalk towards the passenger side of her
car.  As he was walking, Ms. Morales
locked her doors.  Ms. Morales watched
the man in her rear view mirror as he just stood there looking around.  For a second, she lost sight of him and then
he reappeared at the back of her car on the driver=s
side.  The man had opened his pants and
Ms. Morales saw that he was walking up to her door, holding his penis in his
hands masturbating and rubbing his penis against her car to the driver=s door. 
When he got to her door, he tried to open it.  Because the door was locked, it made a
clicking noise, which she heard more than once. 
Ms. Morales started her car and backed out of the parking space,
striking the man in the groin area with her side mirror in the process.  The man stepped in front of her car in the
space where she had been parked and smiled at her as he zipped or buttoned up
his pants.








Ms. Morales drove
to the police department and reported the incident.  Officer Gabriel Villanueva took her
complaint.  Ms. Morales returned to the
apartment complex with Officer Villanueva and another detective to identify a
suspect who was being held, but she told them he was not the same man.  They returned to the police station and then
Officer Villanueva escorted her home.

A few days later,
Officer Villanueva came to Ms. Morales=
apartment to show her a photo line up of six individuals.  Ms. Morales initially narrowed the line up
down to two photographs.  She looked at
the two photographs again and identified one individual, Appellant.  On a certainty scale of one to ten, Ms.
Morales rated her certainty as an eight and a half that the individual pictured
was the man from the December 11 incident. 
Ms. Morales signed and initialed Appellant=s
photograph in the photo line up.  Officer
Villanueva then showed her a larger picture of Appellant and Ms. Morales was
very certain that he was the same man. 
Ms. Morales identified Appellant in the courtroom as the man who
approached her car on December 11.  








On
cross-examination, Ms. Morales recalled telling Officer Villanueva that the man
was a dark-skinned black male, six feet, three inches tall.  She remembered that the man=s teeth were white and she did not see
any gold teeth.  Defense counsel asked
Ms. Morales to look at the Appellant=s
teeth and to identify whether these were the same teeth.  Ms. Morales replied, AI
don=t know, sir.@  She agreed that during the incident, the man
who approached her did not say anything to her and did not touch her.  She conceded that her December 14 statement
to the police did not say anything about the man masturbating.  On redirect, Ms. Morales explained that she
had told the police that the man had his penis in his left hand and in her mind
what she described to the police was the same as masturbation.  Ms. Morales maintained that on the day of the
incident, Appellant had white teeth and again identified Appellant as her
assailant.  

Officer Gabriel
Villanueva testified that when he met Ms. Morales in the police station lobby
on December 11, she was hysterical.  He
gathered information from her and because another officer had found someone in
the area who may have matched the description, he and a detective took Ms.
Morales back to see if she could identify the suspect.  Ms. Morales instantly said that the detained
suspect was not the right man.  They
returned to the police station and Officer Villanueva gathered more information
from Ms. Morales.  Upon her request,
Officer Villanueva escorted Ms. Morales back to her residence.

Through further
work, Officer Villanueva developed a possible suspect in Ms. Morales= case. 
Officer Villanueva requested and obtained a photograph of Appellant from
the Texas Department of Public Safety. 
He also obtained the photo line up he later showed to Ms. Morales.  Officer Villanueva agreed that Ms. Morales
narrowed it down to two photographs and then selected Appellant=s photograph from among the two.  She signed and initialed Appellant=s photograph.








On
cross-examination, Officer Villanueva agreed that he was initially dispatched
to the police station lobby to speak with Ms. Morales about an indecent
exposure case, not an attempted sexual assault case.  Officer Villanueva admitted that he did not
try and did not request that another officer try to lift fingerprints from the
driver=s side
door handle.  He also did not try to
obtain any bodily fluid specimens from the car for DNA testing.  On redirect, Officer Villanueva explained
that it was the receptionist at the station who had called it an indecent
exposure case.  Typically, what kind of
case is filed is determined by the D.A.=s
office after he has completed his investigation.  Officer Villanueva also testified that in
this case, he looked for fingerprints, but did not find anything to indicate
that fingerprints could have been lifted from the car.  He testified to the same with regard to the
presence of bodily fluids.

At trial, the
State was allowed to introduce extraneous offense evidence on the issue of
identity.  Charlotte Bridges testified
that on December 12, 2002, she was living in the Ashton Oaks Apartments in
Clute, which is located in Brazoria County, Texas.  That morning, she put her children on the
school bus around 7:45 a.m. and returned to her apartment.  She laid down for about thirty minutes and
then got up to clean her apartment.  She
opened the blinds in the window by her front door.  While she was cleaning, Ms. Bridges noticed a
man walking up and down the sidewalk.  As
he was walking, he occasionally looked inside her window, making eye contact
with Ms. Bridges.  After cleaning up her
apartment, she sat down on the couch next to the window to watch television.

As Ms. Bridges was
sitting on her couch, she felt as if someone was standing right behind her so
she stood up, turned around, and looked out the window.  There was a black man standing outside her
window.  His pants were unzipped, his
penis was in his hand, and he was masturbating. 
Ms. Bridges recalled that the man=s
other arm was up and leaning against the window.  She described the man as dark-skinned, five
feet, nine inches in height, and wearing a dark-colored winter cap and a plaid
jacket.  Ms. Bridges grabbed the
telephone and called the police.  Two
days later, the police brought her a photo line up.  Without hesitation, she picked out Appellant
from the line up.  Ms. Bridges also
identified Appellant in the courtroom as the man who was outside her window on
December 12.  On cross-examination, Ms.
Bridges agreed that Appellant was not trying to get into her apartment.








The State called
Chief Deputy Charles Wagner to testify about Appellant=s
gold teeth caps.  In response to a
subpoena, Chief Deputy Wagner had turned over gold teeth caps to Appellant=s attorney.  At trial, Appellant removed the gold caps
from his four front teeth and Chief Deputy Wagner identified them as the same
ones that he had turned over to Appellant=s
attorney earlier in the year.  Chief
Deputy Wagner explained that the gold caps were in Appellant=s possession when he was booked into
the jail.

In his defense,
Appellant called Officer John McDonald who testified that he arrested Appellant
on December 16.  According to the booking
report, Appellant told him he was five feet, eight inches tall and weighed 142
pounds.  Vicky Lee, the personnel
coordinator for Appellant=s
employer, testified that she was told Appellant worked a night shift on
December 10, 11, and 12.  She, however,
had no document to show this.  Richard
Williams, Appellant=s father,
testified that Appellant was living with him in December 2002.  According to Mr. Williams, Appellant worked
night and day shifts.  Mr. Williams
stated that Appellant is five feet, eight inches tall and guessed that
Appellant weighed about 190 to 200 pounds back in December 2002.          In
his first issue, Appellant argues that the trial court erred in granting the
State=s
challenge for cause to three venire persons because the State asked improper
commitment questions during voir dire. 
During voir dire, the State prosecutor asked the jury panel: 

If you had one witness that you
believed beyond a reasonable doubt to the actual offense, could you convict if
you believed that person beyond a reasonable doubt?  But just because there was one witness would
that keep you from convicting? 

 








Jurors No. 22 (Tasset), No. 29
(Pena), and No. 35 (Mosley) responded affirmatively.  Appellant made no objection to the State=s line of questioning.  The State challenged the three prospective
jurors based on their response to the one-witness question.  The State also challenged Juror No. 35
(Mosley) because he would require the defendant to testify before deciding the
case.  The trial court stated that it
would talk with each of the challenged jurors individually.  The trial court then conducted a hearing in
which it extensively questioned each of the challenged venire persons.  Each of the challenged venire persons
indicated that he could not convict if there was only one witness.  Based on their responses, the trial court
granted the State=s challenges
for cause.  Appellant objected to each
ruling, arguing that the trial court=s
questions were Acommit@ questions.  

Improper
Commitment Question

The trial court
has broad discretion over the process of selecting a jury.  Barajas v. State, 93 S.W.3d 36, 38
(Tex.Crim.App. 2002); Allridge v. State, 762 S.W.2d 146, 167
(Tex.Crim.App. 1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1176, 103
L.Ed.2d 238 (1989).  We leave to the
trial court=s
discretion the propriety of a particular question and the trial court=s discretion will not be disturbed
absent an abuse of discretion.  Barajas,
93 S.W.3d at 38.  

A question is
proper if it seeks to discover a juror=s
views on an issue applicable to the case. 
Barajas, 93 S.W.3d at 38. 
A question can be relevant if it seeks to uncover grounds for a
challenge for cause.  See id. at
39.  However, an otherwise proper
question is impermissible, if it attempts to commit the juror to a particular
verdict based on particular facts.  Barajas,
93 S.W.3d at 38-9; Standefer v. State, 59 S.W.3d 177, 181 (Tex.Crim.App.
2001).  








A commitment
question is a question that commits a prospective juror to resolve, or to
refrain from resolving, an issue a certain way after learning a particular
fact.  Standefer, 59 S.W.3d at
179.  In Standefer, the Court of
Criminal Appeals articulated the following two-step test for determining
whether a commitment question is proper: 
(1) Is the question a commitment question; and (2) Does the question
include only those facts that lead to a valid challenge for cause?  Standefer, 59 S.W.3d at 182.  If the answer to the first question is Ayes@
and the answer to the second question is Ano,@ then the question asked is an improper
commitment question and the trial court should not allow the question.  Id. at 182-83; Lydia v. State,
109 S.W.3d 495, 497-98 (Tex.Crim.App. 2003). 
Commitment questions are improper (a) when the law does not require the
commitment, such that a juror would not be disqualified for cause by being
influenced by a particular fact or by having a particular attitude or opinion or
(b) even if the question meets the challenge for cause requirement, if it also
includes facts in addition to those necessary to establish a challenge for
cause.  Sanchez v. State, 165
S.W.3d 707, 712 (Tex.Crim.App. 2005).  An
improper commitment question attempts to create a bias or prejudice in the
venire member before he has heard the evidence, whereas a proper voir dire
question attempts to discover a venire member=s
preexisting bias or prejudice.  Id.
at 712.

With respect to
the questions posed by the State prosecutor during voir dire, we observe that
Appellant made no objection to the prosecutor=s
line of questioning, including no objections to its alleged improper commitment
questions to the jury panel.  To preserve
error for appellate review, the complaining party must make a timely, specific
objection and obtain a ruling on such objection.  See Tex.R.App.P.
33.1(a).  Appellant has failed to
preserve error as to whether the State prosecutor asked improper commitment
questions to the jury panel, therefore, we overrule this portion of Appellant=s first issue.

State=s Challenges for Cause to Three Venire
Persons

Within his first
issue, Appellant also contends that the trial court erred in granting the State=s challenges for cause to Jurors No. 22
(Tasset), No. 29 (Pena), and No. 35 (Mosley).

 








Standard
of Review

To show error in
the trial court=s grant
of the State=s
challenge for cause, an appellant must show that either:  (1) the trial court applied the wrong legal
standard in sustaining the challenge; or (2) the trial court abused its
discretion in applying the correct legal standard.  See Jones v. State, 982 S.W.2d 386,
388‑89 (Tex.Crim.App. 1998).  The
State is entitled to challenge a potential juror for cause if that juror has a
bias or prejudice against any phase of the law upon which the State is entitled
to rely for conviction or punishment.  See
Tex.Code Crim.Proc.Ann. art.
35.16(b)(3)(Vernon Supp. 2004-05).

Challengeable
for Cause 

A venire person
who categorically refuses to convict upon the testimony of a single witness is
not challengeable for cause on this basis alone so long as his refusal is
predicated on his reasonable understanding of what constitutes proof beyond a
reasonable doubt.  Castillo v. State,
913 S.W.2d 529, 533 (Tex.Crim.App. 1995). 
A[A]
venireman who will not be convinced beyond a reasonable doubt on the testimony
of a single eyewitness is nevertheless a venireman who can follow the law.@ 
Id. at 533.  However, a
venire person who could not convict even if he believed the State=s only witness, and that testimony
convinced him beyond a reasonable doubt of the defendant=s
guilt, can be challenged for cause.  Id.  In other words, a venire person who would
require more evidence than the testimony of a single witness, even if that
testimony were enough to convince him of guilt beyond a reasonable doubt, is
challengeable for cause.  Id. at
534.








If the trial court
erred by granting the State=s
challenges for cause to the three venire persons, we must disregard the error unless
it affected Appellant=s
substantial rights.  See Jones,
982 S.W.2d at 391‑92.  A defendant
does not have a right to have a particular individual serve on the jury.  Id. at 393.  The defendant=s
only substantial right is that the jurors who do serve be qualified.  Id. 
If the trial court erroneously granted the State=s
challenge for cause to the venire persons, this error will require reversal
only if the error actually deprived the defendant of a lawfully constituted
jury.  See id. at 394; Ladd v.
State, 3 S.W.3d 547, 562 (Tex.Crim.App. 1999).

First, we find
that the State=s initial
question to the jury panel was a proper commitment question, in that it sought
to elicit whether any of the venire members could not convict based on the
testimony of only one witness, even though that witness=s
testimony convinced him beyond a reasonable doubt of the defendant=s guilt.  The initial affirmative responses of Jurors
No. 22 (Tasset), No. 29 (Pena), and No. 35 (Mosley) indicated that they would
hold the State to a higher burden than the law allows and thus, they were
challengeable for cause.  See Castillo,
913 S.W.2d at 533.

In response to the
State=s
challenges, the trial court, however, conducted its own questioning of the
challenged venire members.  After first
discussing the State=s
burden and the meaning of beyond a reasonable doubt generally, the following
exchange occurred between the trial court and Juror No. 22 (Tasset):

The
Court:        The question is whether or
not if you believe that one witness beyond a reasonable doubt would you still
not be able to vote to convict?  That=s really what the question is.  

In other words, do
you have in your mind the opinion that if there is only one witness and no
other evidence of any kind, do you have the idea that you could not convict,
even if you believed that one witness proved their case beyond a reasonable
doubt?  It=s
a follow-the-law question.

 








Juror
Tasset:     The way I look at it is the
definition of the five things I guess you put on this--or seven [elements of
the offense].  I don=t think you can ever get there, beyond
a reasonable doubt, with one witness. 
Okay?

 

The
Court:        Okay.  So you don=t
think if it was just one witness that you could convict, correct?

 

Juror
Tasset:     That=s
correct.

 

Over Appellant=s objection, the trial court sustained
the State=s
challenge for cause to Juror No. 22.  The
trial court next questioned Juror No. 29 (Pena).  The following exchange occurred:

The
Court:        No. 29, sir.  You=re
Mr. Pena?  If the law--the law requires
any particular number of witnesses or any particular type of proof would you
require more than one witness=
oral testimony before you could decide a case?

 

Juror
Pena:       Yes.

 

The
Court:        Even though the law doesn=t require that?

 

Juror
Pena:       Yes.

 

The
Court:        Any other questions?

 

Defense:           Mr. Pena, have you got a preconceived
idea then that you could never convict anybody for any crime unless the State
produced more than one witness?

 

Juror
Pena:       That=s
just the way I feel.

 

Over Appellant=s objection, the trial court sustained
the State=s
challenge to Juror No. 29.  The trial
court next questioned Juror No. 35 (Mosley). 
In relevant part, the following exchange occurred:








The
Court:        Okay. Mr. Mosley.  Mr. Mosley, if the law doesn=t require any particular quantum of
witnesses, okay--they would require there to be evidence to convict somebody,
but they don=t tell
you what necessarily the evidence has to be, would you impose a requirement in
your mind that the law doesn=t
require that there would have to be more than one witness before you could
decide a case?

 

Juror
Mosley:   In my opinion, yes,
because--well, I didn=t
want to say this; but nothing against women or girls; but they will lie to you,
and if put in a tight situation they will lie to you.  And so that=s
the reason why I feel like because of what I just heard it just sounds like >he said, she said= and anyone--it would have to be to
where I hear both sides and evidence, of course, and base my opinion upon
that.  That=s
just my opinion.

 

The
Court:        Well, we are not asking you
about what the--that=s
a little bit different because you are talking about a factual scenario about
the credibility of women.  I=m asking you about are you--would you
impose a requirement in your mind before you could convict someone that there
has to be more than one witness if the law doesn=t
require that?

 

Juror
Mosley:   The purpose why I answered yes
because--okay.  In my mind, I can=t totally believe one particular person
if I don=t hear
from the other person.  Because then I=m only going on one side of the story,
in my opinion.

 

The
Court:        So you would require both
sides to testify?

 

Juror
Mosley:   In my opinion, yes.

 

The
Court:        So like you=ve heard of disorderly conduct charges
before, like somebody cusses somebody out and it offends them?

 

Juror
Mosley:   Yes.

 

The
Court:        If it=s
one witness saying this guy called my mother some bad name or something like
that, you couldn=t convict
the person who is alleged to have been saying these bad words unless there was
another witness; is that correct?

 

Juror
Mosley:   Correct, because that person
could be--

 

The
Court:        Even if the law didn=t require more than one witness?

 








Juror
Mosley:   Yeah, that=s the way I feel.

 

The
Court:        Any other questions,
Counsel?

 

Defense:           Mr. Mosley, you could--could you find
a defendant in a criminal case not guilty, even if they did not testify and
give their side of it?

 

Juror
Mosley:   See, that=s
kind of a touch and go because that depends on what the evidence is.  If the evidence is whatever it may be.  Let=s
just say they say this person didn=t
do it.  Then okay.  But if the evidence is a close call then I
personally would have to hear from that person to find out to make my judgment,
I guess.  

 

Defense:           But you would require the State to
prove its case beyond a reasonable doubt whether the accused testified or not?

 

Juror
Mosley:   Yes, yes.

 

                                                              .               .               .

 

The
State:         Mr. Mosley, as I understand
it, if you felt like--if there was a situation where there was one witness, you
would want to hear from the defendant and you would require the defendant to
testify; is that correct, before you could make a decision?

 

Juror
Mosley:   Again, I said yes.  And reason why is the same.  I don=t
even--you=ve heard
it.

 








In reviewing the
exchanges between the trial court and the challenged venire persons, it is
apparent that the trial court=s
questions on the single witness testimony were slightly flawed.  As noted above, a venire person who will not
be convinced beyond a reasonable doubt on the testimony of a single eyewitness
is nevertheless a venire person who can follow the law.  See Castillo, 913 S.W.2d at 533.  In the first exchange, the trial court
properly inquired as to whether Juror Tasset would not convict based on single
witness testimony even though he believed that one witness proved the State=s case beyond a reasonable doubt.  Instead of answering the question posed,
Juror Tasset stated that he did not believe the State could prove the offense
beyond a reasonable doubt based on one witness. 
Further, Juror Tasset agreed that he could not convict if there was just
one witness.  Juror Tasset=s refusal to render a guilty verdict
based on single witness testimony may have only indicated that his Athreshold for proof beyond a reasonable
doubt is somewhat higher than the minimum that the law recognizes as sufficient@ in which case, he was not
challengeable for cause.  Castillo,
913 S.W.2d at 533.  Similarly, the trial
court=s
questions to Juror Pena only show that Juror Pena would require more than one
witness before he could decide a case--without ever determining whether he
would categorically refuse to convict even if he believed the one witness and
that testimony convinced him beyond a reasonable doubt of a defendant=s guilt.  See id. at 533.  

With regard to
Juror Mosley, the State challenged him on two grounds:  his response to their single witness question
and because he would require the defendant to testify before deciding the
case.  During the questioning, Juror
Mosley maintained that he would require the defendant to testify in a Ahe said, she said@ type of case.  Since the law requires that a defendant=s Fifth Amendment right not to testify
against himself not be held against him, Juror Mosley was properly challenged
for cause on that ground.  See e.g.,
Standefer, 59 S.W.3d at 181 n.16 (whether a juror could follow the law that
precludes him from holding against the defendant his failure to testify is a
proper commitment question that tests the prospective jurors ability to follow
a legal requirement).  








However, even if
we agree with Appellant that the State=s
challenges for cause were erroneously granted, he has failed to show he was
harmed by such error.  Appellant states
that he was harmed because the jury deliberated for only two hours and
forty-eight minutes, showing that the trial was mere formality and a foregone
conclusion.  We cannot agree that the
amount of time the jury spent in deliberations alone shows that Appellant was
deprived of a lawfully constituted jury. 
There is nothing that indicates that the jurors who served were not
qualified.  We conclude that any error in
granting the State=s
challenges for cause to the three venire persons, did not affect Appellant=s substantial rights and thus, does not
constitute reversible error.  We overrule
Appellant=s first
issue in its entirety.

In Issues Two and
Three, Appellant contends that the evidence is legally and factually
insufficient to sustain his conviction for attempted sexual assault.  Specifically, Appellant argues that there was
no evidence to show intent to commit sexual assault and a complete lack of
crucial evidence such as verbal threats and physical contact between Appellant
and the complainant.  Rather, Appellant
asserts, the evidence only shows Appellant committed indecent exposure.

Standards
of Review








In reviewing the
legal sufficiency of the evidence, we must view the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Hernandez v.
State, 946 S.W.2d 108, 110-11 (Tex.App.--El Paso 1997, no pet.).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See
Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v.
State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).  Instead, our duty is to determine whether if
both the explicit and implicit findings of the trier of fact are rational by
viewing all the evidence admitted at trial in the light most favorable to the
verdict.  See Adelman, 828 S.W.2d
at 421-22.  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict.  Matson, 819 S.W.2d at 843.

In reviewing the
factual sufficiency of the evidence, we must determine whether considering all
the evidence in a neutral light, the jury was rationally justified in finding
guilt beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). Evidence can be
factually insufficient if the evidence supporting the verdict, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt,
or contrary evidence is so strong that guilt cannot be proven beyond a
reasonable doubt.  Id. at
484-85.  Our evaluation should not
intrude upon the fact finder=s
role as the sole judge of the weight and credibility given to any witness=s testimony.  Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997).  We will not set
aside the judgment unless the evidence supporting the verdict is so weak as to
be clearly wrong and manifestly unjust.  Zuniga,
144 S.W.3d at 481.  A clearly wrong and
manifestly unjust verdict occurs where the jury=s
finding Ashocks
the conscience@ or Aclearly demonstrates bias.@ Id.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex.Crim.App. 2003). 

Attempted
Sexual Assault








A person commits
the offense of attempted sexual assault if, with specific intent to commit
sexual assault, he does an act amounting to more than mere preparation that
tends but fails to effect the commission of sexual assault.  Tex.Pen.Code
Ann. ''
15.01(a), 22.01(a)(1) (Vernon 2003 & Supp. 2004-05).  A person commits sexual assault if he
intentionally or knowingly:  (1) causes
the penetration of the anus or sexual organ of another person by any means,
without that person=s
consent; or (2) causes the penetration of the mouth of another person by the
sexual organ of the action, without that person=s
consent; or (3) causes the sexual organ of another person, without that person=s consent, to contact or penetrate the
mouth, anus, or sexual organ of another person, including the actor.  Tex.Pen.Code
Ann. '
22.011(a)(1).  A sexual assault is
without the consent of the other person if the actor compels the other person
to submit or participate by the use of physical force or violence; or the actor
compels the other person to submit or participate by threatening to use force
or violence against the other person, and the other person believes that the
actor has the present ability to execute the threat.  See Tex.Pen.Code
Ann. '
22.011(b)(1)-(2).

The criminal
attempt statute does not require that every act short of actual commission be
accomplished in order for one to be convicted of an attempted offense.  Lindsey v. State, 764 S.W.2d 376, 378
(Tex.App.‑-Texarkana 1989, no pet.), citing Hackbarth v. State,
617 S.W.2d 944, 946 (Tex.Crim.App. 1981). 
Further, intent may be inferred from the accused=s
actions, words, and conduct.  Patrick
v. State, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995); Lindsey, 764
S.W.2d at 378.








Viewing the
evidence in the light most favorable to the verdict, the evidence shows that
Ms. Morales observed a man she later identified as Appellant outside her
apartment complex as she took her daughter to school.  When she returned ten minutes later,
Appellant was still standing near the parking area of the complex.  He was moving around and looking in her
direction.  Ms. Morales was afraid to
exit her car, so she pretended she was reading. 
Appellant walked around her car, from the passenger side, to the rear,
and then towards the driver=s
side.  Ms. Morales locked her doors as he
was walking.  As Appellant was walking
towards the driver=s side
door, Ms. Morales saw Appellant holding his penis in his hands and
masturbating.  Appellant rubbed his penis
against the car door and tried to open the door more than once.  Ms. Morales escaped by starting her car,
backing out, and driving away from the scene. 


From these facts,
a rational jury could infer that Appellant by exposing his penis, suggestively
rubbing it against her car, and then attempting to enter her car, intended to
sexually assault Ms. Morales and that he did an act amounting to more than mere
preparation that tended but failed to effect the commission of sexual
assault.  Appellant argues that crucial
evidence is missing in this case, namely, that Appellant did not speak,
threaten, or touch the complainant.  Ms.
Morales thwarted Appellant=s
attempt to enter her car by locking the doors, therefore no physical contact
occurred.  However, Ms. Morales= testimony indicates that she was
afraid to exit her car while Appellant was standing in such close proximity and
in the same location where he had been when she left ten minutes ago.  The jury could have reasonably inferred that
Appellant=s
stalking behavior and furtive movements around her car were physically
threatening to Ms. Morales.  We conclude
the evidence is legally sufficient to support Appellant=s
conviction for attempted sexual assault. 








With regard to his
factual insufficiency complaint, Appellant again directs our attention to
evidence that shows Appellant did not speak to or touch the complainant.  Appellant also asks that we consider his
prior instances of indecent exposure, however, those instances were discussed
in a hearing outside the jury=s
presence.  Viewing the evidence in a
neutral light, we conclude that the evidence supporting the verdict is not so
weak as to be clearly wrong and manifestly unjust.  See Zuniga, 144 S.W.3d at 481.  Moreover, the contrary evidence is not so
strong that the beyond a reasonable doubt standard of proof could not have been
met.  See id.  Accordingly, we conclude the evidence is both
legally and factually sufficient to sustain Appellant=s
conviction.  Issues Two and Three are
overruled.

In Issue Four,
Appellant contends the trial court erred in refusing to submit his requested
instruction on the lesser-included offense of indecent exposure.

We apply a
two-prong test to determine whether Appellant was entitled to a charge on a
lesser-included offense.  See Rousseau
v. State, 855 S.W.2d 666, 672-73 (Tex.Crim.App. 1993).  First, the lesser-included offense must be
included within the proof necessary to establish the offense charged.  See Bignall v. State, 887
S.W.2d 21, 23 (Tex.Crim.App. 1994); Rousseau, 855 S.W.2d at 672-73; see
also Tex.Code Crim.Proc.Ann.
art. 37.09(1)(Vernon 1981).  Second, the
record must show some evidence that would permit a rational jury to find that
if the defendant is guilty of an offense, he was guilty only of the lesser
offense.  Feldman v. State, 71
S.W.3d 738, 750-51 (Tex.Crim.App. 2002); Rousseau, 855 S.W.2d at 672-73.








Whether one
offense is a lesser-included offense of another is determined on a case-by-case
basis.  Jacob v. State, 892 S.W.2d
905, 907 (Tex.Crim.App. 1995).  Under
Article 37.09 of the Code of Criminal Procedure, an offense is a
lesser-included offense if it is established by proof of the same or less than
all the facts required to establish the commission of the offense charged.  See Tex.Code
Crim.Proc.Ann. art. 37.09(1).  We
employ a three-step analysis in making this determination.  See Jacob, 892 S.W.2d at 907-08; Noyola
v. State, 25 S.W.3d 18, 20-1 (Tex.App.--El Paso 1999, no pet.).  First, we examine the elements of the charged
offense as they appear in the indictment, with special attention to the facts
required to prove the charged offense.  Jacob,
892 S.W.2d at 907; Noyola, 25 S.W.3d at 21.  AFacts
required@ means
the evidence legally required to prove the elements of the charged
offense.  Jacob, 892 S.W.2d at
908.  Second, we examine the statutory
elements of the offense sought as a lesser-included offense.  Jacob, 892 S.W.2d at 907; Noyola,
25 S.W.3d at 21.  Lastly, we must examine
the proof presented at trial to show the elements of the charged offense.  Jacob, 892 S.W.2d at 907-08; Noyola,
25 S.W.3d at 21.  AIf
the facts required to prove the elements of the lesser-included offense are not
functionally the same or less than the charged offense, it is not a
lesser-included offense even if the facts presented at trial could prove the
lesser-included offense.@  Noyola, 25 S.W.3d at 21 (analyzing the
Court=s
interpretation of Article 37.09(1) in Jacob v. State).








In this case,
Appellant was charged with the offense of attempted sexual assault.  See Tex.Pen.Code
Ann. ''
15.01(a), 22.01(a)(1).  The indictment
charged that Appellant Adid
then and there, with the specific intent to commit the offense of Sexual
Assault of D. Morales, do an act, to-wit: 
approach a motor vehicle occupied by D. Morales, exposure his genitals,
and attempt to open the vehicle=s
door, which amounted to more than mere preparation that tended but failed to
effect the commission of the offense intended . . . .@  A person commits indecent exposure if he
exposes his anus or any part of his genitals with intent to arouse or gratify
the sexual desire of any person, and he is reckless about whether another is
present who will be offended or alarmed by his act.  See Tex.Pen.Code
Ann. '
21.08(a)(Vernon 2003).  A lesser-included
offense must be established by less or the same proof, not proof of an
additional matter not required by the indictment for the charged offense.  See Tex.Code
Crim.Proc.Ann. art. 37.09(1). 
Appellant=s
requested lesser offense would require the State to prove he exposed his
genitals with the intent to arouse or gratify the sexual desire of any person
and was reckless as to another=s
presence, therefore, the elements of the lesser offense were not functionally
the same or less than those required to prove the charged offense.  See Jacob, 892 S.W.2d at
908.  However, in examining the proof
presented at trial to show the elements of the charged offense, the record
shows that the requested lesser offense was also proven by the same facts,
namely, Appellant approached Ms. Morales in public while masturbating and
rubbing his penis against her car.  Under
the particular set of facts in this case, we find that the first prong is met.

In applying the
second prong, some evidence must exist in the record that would permit a
rational jury to find that if the defendant is guilty, he is guilty only of the
lesser offense.  Rousseau, 855
S.W.2d 672-73.  A defendant is guilty
only of a lesser-included offense if there is evidence that affirmatively
rebuts or negates an element of the greater offense, or if the evidence is
subject to different interpretations, one of which rebuts or negates a crucial
element.  See Schweinle v.
State, 915 S.W.2d 17, 19 (Tex.Crim.App. 1996)(per curiam); Ramirez v.
State, 976 S.W.2d 219, 227 (Tex.App.--El Paso 1998, pet. ref=d). 
To satisfy the second Rousseau prong, it is not enough that the
jury disbelieves evidence pertaining to the greater offense; rather, there must
be some evidence directly germane to the lesser-included offense to warrant its
submission.  See Hampton v. State,
109 S.W.3d 437, 441 (Tex.Crim.App. 2003). 
If the defendant either presents evidence that he committed no offense
or presents no evidence, and there is no evidence otherwise showing he is
guilty only of a lesser-included offense, then a charge on a lesser-included
offense is not required.  Bignall,
887 S.W.2d at 24, citing Aguilar v. State, 682 S.W.2d 556, 588
(Tex.Crim.App. 1985).








In this case,
however, there is no evidence that would permit a rational jury to find that if
Appellant were guilty of an offense, he was guilty only of the lesser-included
offense.  There was no evidence that
Appellant only intended to expose himself. 
Rather, the evidence showed that Appellant was masturbating while
attempting to gain entry into Ms. Morales=
car.  Therefore, there was no evidence
from which a rational jury could acquit Appellant on the greater offense while
convicting him of the lesser-included offense. 
See Rousseau, 855 S.W.2d at 672.  Because the second prong cannot be satisfied,
the trial court did not err in refusing to instruct the jury on the requested
lesser-included offense.  Issue Four is
overruled.

In Issue Five,
Appellant asserts that the trial court erred in admitting extraneous offense
evidence.  In response, the State
contends that the evidence was properly admitted for the purpose of proving
identity and to rebut Appellant=s
impeachment of the complainant on the issue of identity.

Standard
of Review

The trial court has
wide discretion in deciding whether to admit or exclude extraneous offense
evidence under Rule 404(b).  Montgomery
v. State, 810 S.W.2d 372, 390 (Tex.Crim.App. 1990)(Op. on reh=g). 
As long as the trial court=s
ruling is within the zone of reasonable disagreement, an appellate court will
not disturb that ruling absent a clear abuse of discretion.  See id.

Relevant
Purpose under Rule 404(b)








Rule 404(b)
prohibits the admission of an extraneous offense at the guilt-innocence phase
of trial to show character conformity, however, the rule does permit the
admission of an extraneous offense if it has relevance for a non character
conformity purpose, such as proving identity.[1]  See Montgomery, 810 S.W.2d at 387; Tex.R.Evid. 404(b).  For proof of identity to be a valid purpose,
it must be an issue in the case.  Page
v. State, 137 S.W.3d 75, 78 (Tex.Crim.App. 2004).  Identity can be raised by defense
cross-examination, such as when the identifying witness is impeached on a
material detail of the identification.  Id.;
see also Lane v.  State, 933
S.W.2d 504, 519 (Tex.Crim.App. 1996)(attacking accuracy of appellant=s confessions raised identity issue); Siqueiros
v. State, 685 S.W.2d 68, 71 (Tex.Crim.App. 1985)(existence of mustache was
material detail of identification to raise identity issue).  A Amaterial
detail@ is a
detail that is relevant to the reliability of the identification.  Page, 137 S.W.3d at 79.  Further, to be admissible to show identity,
an extraneous offense must be so similar to the charged offense as to mark the
offense as the defendant=s
handiwork.  Johnson v. State, 68
S.W.3d 644, 650-51 (Tex.Crim.App. 2002); Lane, 933 S.W.2d at 519.  In determining the similarity of the
offenses, courts should take into account both the specific characteristics of
the various offenses and the time interval between them.  Johnson, 68 S.W.3d at 651.  Sufficient similarity may be shown by proximity
in time and place or by a common mode of committing the offense.  Lane, 933 S.W.2d at 519.








During
cross-examination, defense counsel questioned Ms. Morales about her description
of the alleged assailant.  Ms. Morales
described the man as a dark-skinned black male who was six feet, three inches
tall and wore a black cap and blue checkered jacket.  She agreed that she had told Officer
Villanueva that the man was so tall that his waist and genitals were above the
height of the lower part of the driver=s
window.  The defense counsel then
questioned Ms. Morales about her recollection of the man=s teeth:

Defense:           I believe on direct examination you
told [state prosecutor] that the person had very white teeth; is that correct?

 

Ms.
Morales:    I saw white teeth.  Yes, sir.

 

                                                              .               .               .

 

Defense:           Would you mind looking at the mouth
of the accused?  Are these the teeth you
saw that were very white or white?

 

Ms.
Morales:    I don=t
know, sir.

 

During redirect, the State prosecutor questioned Ms. Morales
about her response.

 

The
State:         Now the defendant--defense
attorney asked you about the defendant=s
teeth.  What do you recall that day?  What do you recall seeing of the man who
approached your car, without regard as to what you wrote or what you told
anybody when?  Just right now tell the
jury what you remember that man looking like.

 

Ms.
Morales:    He had white teeth, broad
shoulders and a cap on, blue cap, and a flannel jacket and some facial hair.

 

The
State:         And I notice that during
your testimony you looked the direction of the Judge=s
bench.  Is there a reason that you keep
looking over there?

 

Ms.
Morales:    I don=t
want to see him.

 

The
State:         [Defense counsel] asked you
to look at the defendant=s
mouth earlier; is that correct?

 

Ms.
Morales:    Yes, ma=am.

 

The
State:         And when you did that he
asked you if those were the teeth you saw on the date of the offense; is that
right?

 

Ms.
Morales:    Yes, ma=am.

 








The
State:         And I think your response
was you don=t know if
those were the teeth; is that right?

 

Ms.
Morales:    Yes, ma=am.

 

The
State:         Do you know whether or not
the man seated at the table next to me was the person who approached your car
with his penis in his hand on December 11th, 2002?

 

Ms.
Morales:    That=s
him.

 

In re-cross examination, defense
counsel asked Ms. Morales, AAnd
you were only 8 and a half out of 10 sure that the person you finally picked
[from the photo line up] was the person, correct?@  Ms. Morales replied, AYes,
sir.@

Outside the jury=s presence, the State prosecutor argued
that the defense counsel=s
cross-examination of Ms. Morales has raised the issue of identity.  The State prosecutor noted, A[w]hen the defense asked the victim to
look at the defendant=s
mouth and he, for the record, smiled and revealed some gold in his teeth, I
think that was done specifically for the purpose of trying to impeach her identification
of him at the scene when she said she saw white teeth.@  The State also argued that defense counsel=s cross-examination of Ms. Morales
concerning her assailant=s
height also raised the issue of identity, therefore extraneous offense evidence
would be admissible under Rule 404(b) for the purpose of proving identity.  The trial court agreed that the issue of
identity has been raised and proceeded to conduct a hearing on the
admissibility of various extraneous offenses that the State sought to introduce
at trial.  The trial court sustained
Appellant=s
objection to all but one of the extraneous offenses, that is, the extraneous
offense involving Charlotte Bridges.








First, in
reviewing the relevancy of the Bridges extraneous offense, the record shows
that during cross-examination defense counsel attempted to impeach Ms. Morales= testimony on a material detail of her
identification of her assailant=s
facial appearance.  The question on
review was particularly damaging or effective in light of all the evidence
presented.  Page, 137 S.W.3d at
79.  We conclude that the issue of
identity was raised by defense counsel=s
cross-examination of Ms. Morales.








Second, there are
numerous similarities between the Bridges extraneous offense and the charged
offense.  Ms. Bridges testified that a
man was pacing the sidewalk outside her apartment on the morning of December
12, 2002 after she had put her children on the school bus.  Later, Ms. Bridges was sitting on her couch
near a window and turned to see the same man standing outside her window.  He had an arm up against her window and was
stroking his penis with his other hand. 
Ms. Bridges stated that the man=s
pants were not down, just unzipped.  She
described him as a black male, wearing a blue or black winter cap and a colored
jacket.  Two days after the incident, Ms.
Bridges positively identified Appellant as the man outside her window from a
photo line up shown to her by the police and also identified Appellant in the
courtroom during the hearing.  Both
offenses involved a lone female who had returned to her apartment complex after
getting her children off to school in the morning.  In both offenses, the man paced outside on
the sidewalk before making contact.  Both
women described the man as a black male wearing a knit or wool cap and a
multi-colored or checkered jacket.  In
each instance, the man exposed his penis and masturbated with his pants
unzipped, but not pulled down.  In
addition, in each instance the man did not immediately leave, but rather
watched as each woman attempted to flee or seek help.  While Ms. Bridges testified that Appellant
did not try to enter her apartment, given the proximity in time and
similarities in the common mode of committing the offenses, we conclude that
the offenses were sufficiently similar to mark them as Appellant=s handiwork.  Therefore, the trial court did not abuse its
discretion in determining the Bridges extraneous offense was relevant on the
issue of identity.

Rule
403 Balancing

In addition to
challenging its relevancy, Appellant also argued that the prejudicial effect of
admitting the Bridges extraneous offense evidence vastly exceeded its probative
value.

Rule 403 provides
that A[a]lthough
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.@  Tex.R.Evid.
403.  There is a presumption that
relevant evidence is more probative than prejudicial.  See Montgomery, 810 S.W.2d at
389.  In reviewing the trial court=s Rule 403 balancing-test
determination, a reviewing court is to reverse the trial court=s ruling Ararely
and only after a clear abuse of discretion.@  Mozon v. State, 991 S.W.2d 841, 847
(Tex.Crim.App. 1999), quoting Montgomery, 810 S.W.2d at 389.  








Factors employed
in balancing the prejudicial and probative value of an extraneous offense under
Rule 403 are:  (1) how compellingly the
extraneous offense evidence serves to make more or less probable a fact of
consequence--a factor which is related to the strength of the evidence
presented by the proponent to show the defendant in fact committed the
extraneous offense; (2) the potential the other offense evidence has to impress
the jury Ain some
irrational but nevertheless indelible way;@
(3) the time the proponent will need to develop the evidence, during which the
jury will be distracted from consideration of the indicted offense; and (4) the
force of the proponent=s
need for this evidence to prove a fact of consequence, i.e., does the proponent
have other probative evidence available to him to help establish this fact, and
is this fact related to an issue in dispute. 
Mozon, 991 S.W.2d at 847; Montgomery, 810 S.W.2d at
389-90.

Applying the Rule
403 balancing factors, we find that the Bridges extraneous offense evidence was
strong and compelling evidence with regard to Appellant=s
identity in the charged offense.  There
were significant similarities between the Bridges offense and the instant
offense and Ms. Bridges=
unequivocal identification of Appellant in a case involving similar
circumstances tended to make more probable Ms. Morales=
identification of Appellant with respect to the charged offense.  However, the extraneous offense was not so
similar to the charged offense or inherently inflammatory such that it would
sway the jury is some irrational, but nevertheless indelible way.  In addition, Ms. Bridges= testimony was preceded by a limiting
instruction from the trial court, specifically instructing the jury to consider
her testimony for the issue of identity only. 
Thus, we conclude there was little chance that the jury would find
Appellant guilty on an improper basis. 
Lastly, Ms. Morales, the single eyewitness in the State=s case-in-chief, was impeached on the
basis of her description of Appellant=s
physical appearance.  She had also
exhibited some degree of uncertainty in her initial identification of Appellant
from the police photo line up.  Since the
State had no other evidence to establish identity, it had a compelling need to
present the extraneous offense evidence. 
In light of the factors discussed above, we find that the trial court
did not abuse its discretion in concluding that the probative value of the
extraneous offense evidence was not substantially outweighed by any prejudicial
effect.  Issue Five is overruled.








In his sixth
issue, Appellant contends the trial court erred in allowing testimony during
the punishment phase on the details of two prior convictions that were alleged
for enhancement purposes.  Specifically,
Appellant complains of the testimony of Gary Polh and Pamela Benton, however,
he raised no objections during their testimony. 
Therefore, Appellant has failed to preserve his complaint for appellate
review.  See Tex.R.App.P. 33.1(a); Brooks v.
State, 990 S.W.2d 278, 286 (Tex.Crim.App. 1999).  Issue Six is overruled.

In his seventh
issue, Appellant argues that the State prosecutor improperly argued for the
jury to return a guilty verdict based on the demands and expectations of the
community.  Specifically, Appellant
complains of the following statement:

The
State:         Ladies and gentlemen, if it=s an exaggeration to draw a charge to
protect then law enforcement needs to change their way of thinking.  Because that=s
not the way I believe the people of our county believe.

 

Defense counsel objected to the
statement, arguing that it was outside the evidence and was an appeal to
community expectations.  The trial court
sustained the objection.  Appellant did
not request a limiting instruction nor did he request a mistrial.

To preserve a
complain on appeal about an erroneous jury argument, a defendant must show he
objected and pursued his objection to an adverse ruling.  Cockrell v. State, 933 S.W.2d 73, 89
(Tex.Crim.App. 1996).  Appellant did not
obtain an adverse ruling, therefore he was granted all the relief he requested
and has forfeited his right to complain of any error on appeal.  See id.  Accordingly, Issue Seven is overruled.

We affirm the
trial court=s
judgment.

August
23, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Rule 404(b) provides:

 

Evidence of other crimes, wrongs or
acts is not admissible to prove the character of a person in order to show
action in conformity therewith.  It may,
however, be admissible for other purposes, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or
accident, provided that upon timely request by the accused in a criminal case,
reasonable notice is given in advance of trial of intent to introduce in the
State=s
case-in-chief such evidence other than that arising in the same transaction.

Tex.R.Evid. 404(b).