**Darrell Wayne LINDSEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–88–018–CR.**

Court of Appeals of Texas,
Texarkana.

Jan. 18, 1989.

John Skotnik, Bonham, for appellant.

Dan Meehan, Dist. Atty. of Fannin County, Bonham, for appellee.

GRANT, Justice.

Appellant Darrell Wayne Lindsey was convicted of the offense of attempted sexual assault. The jury assessed punishment at six years' confinement in the Texas Department of Corrections.

 Lindsey's court-appointed attorney has filed an appellate brief in which, after a review of the record and the related law, he concludes that the appeal is frivolous and without merit. Beyond his professional evaluation of the record, however, he has presented one point of error which may arguably support an appeal. The brief thus meets the requirements of *Anders v.*

*California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *see also, High v. State,* 573 S.W.2d 807 (Tex.Crim.App. [Panel Op.] 1978); *Currie v. State,* 516 S.W.2d 684 (Tex.Crim.App.1974); *Gainous v. State,* 436 S.W.2d 137 (Tex.Crim.App.1969). On August 29, 1988, counsel mailed a copy of his brief to the appellant and informed him of his right to examine the entire appellate record for the purpose of filing a pro se brief. No pro se brief has been filed.

Counsel contends that the trial court erred by denying appellant's motion for an instructed verdict because the State failed to carry its burden of proving every element of the alleged offense. Tex.Code Crim.Proc.Ann. art. 38.03 (Vernon Supp. 1989). Specifically, he urges that the State failed to produce sufficient evidence to prove beyond a reasonable doubt the requisite element that the alleged act constituted more than mere preparation. Tex.Penal Code Ann. § 15.01 (Vernon Supp.1989).

In accordance with Tex.Penal Code Ann. § 22.011 (Vernon Supp.1989) and § 15.01 (Vernon Supp.1989), the trial court charged the jury that they should find the defendant guilty of attempted sexual assault if they

> believe from the evidence beyond a reasonable doubt that the defendant, Darrell Wayne Lindsey on or about the 21st day of November 1987, in the county of Fannin and State of Texas, did then and there with the specific intent to commit the offense of sexual assault on Leah Stanley, a female, by penetration of the female sexual organ of Leah Stanley by insertion of his sexual organ therein, did then and there intentionally and knowingly attempt to commit said offense of sexual assault on Leah Stanley, without the consent of Leah Stanley, who was a female and not then the spouse of the defendant, said attempt amounting to more than mere preparation that tended, but failed to effect the commission of the offense intended, and the defendant did then and there, in said attempt to commit said sexual assault, make threats to Leah Stanley to use force and violence against Leah Stanley, and Leah Stanley believed that the defendant then and there had

the present ability to execute said threats.

A summary of the testimony of the complainant Leah Stanley, age seventeen, is as follows:

Leah and her stepfather, appellant Darrell Wayne Lindsey, were alone in their home on November 21, 1987. She was in her room fixing her hair and putting on her makeup in preparation for going to her part-time job as a waitress at Braum's restaurant. After coming into her room, Lindsey began rubbing her back and trying to feel of her breasts. She asked him to stop and got up and moved away. He became angry and got her on her back in her sister's bed in a "half laying and half sitting" position on top of her. He tried to kiss her and told her that she was sexy, that she had a great body and ought to give some of herself away. He stated that he "ought to f— her right then" and pulled up her shirt and bra and began fondling her breasts. He then told her that he hated her and ought to rape her right then and that he would kill her if she ever told anybody. Leah testified that she knew Lindsey had been convicted of murder, and that she believed that he could kill her right then. He licked her breasts and then pulled her shirt and bra back down and let her off the bed. Leah was afraid of him and believed what he said. He told her to carry on as if nothing had happened. She went to the clothes dryer on the porch, and returned to her room. Lindsey came back into the room and got her in a position where she was lying on her stomach in the bed with her arm twisted behind her back. She fought back but Leah testified that she did not hit or claw Lindsey because she was afraid and because he weighed almost 200 pounds and she only weighed 125 pounds. She testified that she believed that he would kill her if she tried to resist further. He stroked her vaginal area through her clothing and told her that he was going to rape her and if she told anyone he would kill her. After a short interval, he let her up and told her to start getting ready for work. She took a quick bath and was getting dressed to go to work

when her mother came home from her job at her normal arrival time. Lindsey knew the time that Leah's mother normally got off from work and would arrive home. Leah did not tell her mother what had happened because she feared that Lindsey would kill her, but when she got to work, she told her shift supervisor and a co-worker.

Leah's mother, who arrived home from work at 3:20 p.m. on November 21, contradicted parts of her daughter's testimony. She stated that Leah was still taking her bath when she arrived home from work; that she talked to her and that Leah did not appear upset; that she did not appear in a hurry to go to work; that Lindsey had not attempted to fondle Leah on another occasion in a bedroom as claimed by Leah; that, rather, she observed him simply shake her to awaken her to tell her to get up and go to her own bedroom to sleep; and that she had never seen Lindsey strike or slap Leah in the face, as claimed by Leah. As factfinders, the jury was free to weigh the conflicting testimony in reaching its verdict.

When a defendant has done all acts necessary to commit an intended offense, but the intended results do not occur, the attempt statutes can be readily applied. But in the varied fact situations in which the defendant falls short of doing all of the acts necessary to complete the offense, the applications are more difficult. Convictions for attempted offenses under Section 15.01 of the Penal Code must necessarily be considered on a case-by-case basis. *Gibbons v. State*, 634 S.W.2d 700 (Tex.Crim. App.1982). The relevant question on this appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The criminal attempt statute, Section 15.01 of the Texas Penal Code, does not require that every act short of actual commission be accomplished in order for one to be convicted of an attempted offense. *Hackbarth v. State*, 617 S.W.2d 944 (Tex. Crim.App.1981). Hackbarth had urged the court that absent evidence of "attempted penetration or some attempted act of deviant sexual intercourse," the evidence was insufficient to prove the offense of attempted rape. The court found that attempted penetration was not necessary to support the conviction for attempted rape. In that case, the appellant entered a convenience store, grabbed the female clerk, attempted to remove her clothing and exposed his penis. The court found that those acts tended, but failed, to effect the commission of the offense intended and that the fact that the appellant could have taken further actions, without actually committing the offense of rape, did not render his actions merely preparatory.

In another attempted rape case, *Johnson v. State*, 633 S.W.2d 888 (Tex.Crim.App. 1982), the court was faced with a sufficiency of the evidence question. In that case, the appellant entered a convenience store, held the female clerk behind the counter and grabbed her "private parts." She struggled, he attempted to drag her to the back of the store, and at the same time he put his hands under her shirt and on her breasts, unsnapped her pants, and said the word "f—" in a "sensuous manner." She pulled the appellant to the front door and screamed for help. He then left and drove away. The court found that there was sufficient evidence to establish the specific intent to commit the offense of rape.

We now examine the evidence in the present case in light of the elements required to prove the offense of sexual assault. First, the State must prove the intent to commit the offense of sexual assault. Intent may be inferred from conduct, remarks and the surrounding circumstances. *Sanders v. State*, 657 S.W.2d 869 (Tex.App.–Texarkana 1983, no pet.).[1]

1. In *Sanders v. State*, 657 S.W.2d 869 (Tex.App.–Texarkana 1983, no pet.), the court found there was sufficient evidence to sustain a conviction of attempted aggravated rape where the defendant stated he wanted the victim, took her to an isolated spot, pulled on her blouse, and ordered her to pull her pants down, threatening to shoot her if she did not comply.

In reviewing the evidence in the present case, the matter which invites inquiry is why Lindsey did not continue to pursue his avowed purpose. There was no evidence of an interruption by a third party or of the victim's resistance or escape deterring Lindsey. There was evidence from which it could be inferred that Lindsey stopped his activities because he knew that his wife, Leah's mother, was due to return from work at that time. Lindsey's failure to complete the act of sexual assault, however, does not negate Lindsey's intent. The defense of renunciation (Tex.Penal Code Ann. § 15.04 (Vernon 1974)) requires an affirmative showing of voluntary repentance or change of heart. *Thomas v. State,* 708 S.W.2d 861 (Tex.Crim.App.1986); *Chennault v. State,* 667 S.W.2d 299 (Tex. App.–Dallas 1984, pet. ref'd). Lindsey did not request an instruction on renunciation at the trial, nor does he urge this affirmative defense on appeal.

Thus, our inquiry does not deal with why Lindsey abandoned his purpose, but rather whether there was sufficient evidence to show that he had an intent to commit the offense of sexual assault. There was evidence that Lindsey twice physically attacked Leah and positioned himself on top of her; there was evidence that he fondled her vaginal area through her clothing and pulled up her shirt and bra and fondled and licked her breasts. There was evidence that he told her that he was going to rape her and that he threatened to kill her if she told anyone. Both his physical acts and his spoken words are consistent with a specific intent to commit the offense of sexual assault.

The next required element is that the action be without Leah's consent. Leah testified that she struggled, but that he was much bigger than she and that she was afraid that he would kill her. There is nothing in the testimony to indicate that she in any way consented to the activities.

Next, the State was required to prove that Lindsey's acts were more than mere preparation. As stated, the criminal attempt statute does not require that every act short of actual commission be accomplished. The two physical attacks, coupled with touching of the vaginal area (outside her clothing) and her breasts [2] and with the language used by Lindsey telling her what he was going to do and placing her in fear of her life are more than just mere preparation. There is ample evidence in the record to prove threats to use force and violence, and Leah testified that she believed the threats and believed that Lindsey had the present ability to execute those threats. We find that there was sufficient evidence for the jury to find beyond a reasonable doubt that Lindsey was guilty of the offense of attempted sexual assault.

The judgment of the trial court is affirmed.

---

2. In the cases of *State v. Schultz,* 88 N.C.App. 197, 362 S.E.2d 853 (1987), and *State v. Hall,* 85 N.C.App. 447, 355 S.E.2d 250 (1987), a North Carolina court held that a touching of breasts accompanied by threats and other surrounding circumstances exceeded mere preparation and was sufficient to sustain the offense of attempted rape.