Opinion issued October 13, 2005








     






In The
Court of Appeals
For The
First District of Texas




NOS. 01–04–01100–CR
           01–04–01101–CR




RONNIE LEE DIXON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from 179th District Court 
Harris County, Texas
Trial Court Cause Nos. 959564 and 959565




MEMORANDUM OPINION

          A jury convicted appellant, Ronnie Lee Dixon, of attempted sexual assault


 and
kidnapping.


 The trial court found the enhancement allegations of prior convictions
of kidnapping and aggravated robbery to be true and assessed punishment at 40 years
in prison for each offense, to be served concurrently. Raising three points of error in
each appellate cause, appellant challenges the legal and factual sufficiency of the
evidence to support the convictions and contends that the trial court abused its
discretion in denying his motion for mistrial. 
          We affirm.Background
          On the night of August 24, 2003, and into the early morning of August 25,
2003, Trisanne Duffy worked as a bartender at Texas Saloon, located in Pasadena,
Texas. At approximately 7:45 p.m., appellant arrived at Texas Saloon and sat down
at the bar. Duffy and appellant engaged in casual conversation and discussed
appellant’s motorcycle and job. Appellant’s demeanor made Duffy feel uneasy. 
Appellant tried to move close to Duffy and continually stared at her. Appellant
remained seated at the bar until approximately 9:30 p.m., when Duffy saw appellant
leave behind another patron. 
          Appellant later returned to the bar at approximately 1:00 a.m. At that time,
there were three people in the bar other than appellant: Duffy, Lawrence Garcia, and
another patron. Garcia was the custodian for the bar and arrived that night at
approximately 11:00 p.m. When he arrived, Garcia saw a motorcycle parked outside
the bar. At approximately 2:00 a.m., appellant was asked to leave because the bar
was closing. After appellant left, and after Duffy and Garcia finished their shifts,
Garcia took Duffy home at approximately 3:00 a.m. Duffy noticed a motorcycle
parked outside the bar as they left.
          After Garcia dropped Duffy off at her home, and as he was driving away, he
noticed in his rear-view mirror that a man wearing a white T-shirt and red cap was
running behind his truck and toward Duffy’s house. Garcia thought little of it and
continued driving. Duffy was near the front of her house when appellant approached
her from behind, grabbed her hair, and covered her mouth with his hand. Appellant
then dragged Duffy, who was screaming, to a grassy area near her driveway and threw
her to the ground. Duffy’s face was in the grass and appellant was lying on top of
her. Appellant told Duffy that he would cut her throat if she did not stop screaming. 
Appellant then asked Duffy for her keys and purse. Duffy complied and told
appellant that there was money in the purse. Appellant hesitated for a moment and
then placed Duffy’s keys and purse near her roommate’s car, which was parked in the
driveway. Appellant instructed Duffy to get up. He then dragged her by her hair
toward the back of her next-door-neighbor’s house. The neighbor, James Price, had
recently moved in and had not yet put up blinds or curtains, giving the house an
appearance of being vacant. 
          As appellant dragged her to the back of Price’s house, Duffy continued
screaming and struggling with appellant, hoping to get Price’s attention. Duffy’s
screams and the noise from the struggle awoke Price’s dog, which began barking. 
During this time, appellant continued to threaten Duffy, telling her that he would cut
her throat if she continued to scream. 
          Appellant dragged Duffy toward a grassy area in the back of Price’s house and
pushed her down. While Duffy lay face down in the grass, appellant got on top of her
and grabbed her hair. Appellant punched Duffy in the head, and she continued to
scream. Appellant again told Duffy that he would cut her throat if she was not quiet. 
Duffy stopped screaming, and appellant took his right hand from her mouth and
grabbed her breast twice. Duffy began screaming again, and appellant began choking
her to the point that she could not breathe. Appellant told her that he would allow her
to breathe if she would stop screaming. 
          During this time, Price was awakened by Duffy’s screams and his barking dog. 
When he looked out the window, Price saw Duffy and appellant standing in front of
one another. Price thought that Duffy and appellant were merely arguing and decided
to go back to bed. However, shortly thereafter, Price heard whimpering. Price looked
out his window and saw appellant on top of Duffy. Price observed that appellant had
his hand over Duffy’s mouth and heard appellant tell Duffy to “shut up.”
          Price called 9-1-1 and went out to his truck, retrieved his gun, and yelled at
appellant to stop what he was doing. Appellant immediately ran from the scene. 
Duffy went into Price’s house and was described later by Price at trial as being
“hysterical.” Price also testified that Duffy’s blouse was ripped open, exposing her
bra. 
          Canine Officer Greg Carlson of the Pasadena Police Department responded to
the call and apprehended appellant one street over from the street where Duffy and
Price lived. When the police brought him back to Duffy’s house, Duffy identified
appellant as her attacker. 
          Appellant was charged with attempted sexual assault and kidnapping. The jury
found appellant guilty of both offenses. 
SUFFICIENCY OF THE EVIDENCE
          In two points of error, appellant challenges the legal and factual sufficiency of
the evidence as to each offense. 
 
A.      Standards of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or if the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 481 (Tex. Crim. App. 2004)). We must defer appropriately to the fact-finder to avoid substituting our judgment for its judgment. Zuniga, 144 S.W.3d at
481–82. Our evaluation may not intrude upon the fact-finder’s role as the sole judge
of the weight and credibility accorded any witness’s testimony. Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). As the evaluator of credibility and
demeanor, the fact-finder alone determines what weight to place on contradictory
testimonial evidence. Id. at 408. The fact-finder may choose to believe all, some, or
none of the testimony presented. Id. at 407. In conducting a factual-sufficiency
review, we must discuss the evidence that, according to the appellant, most
undermines the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003).
          The standards of review for legal and factual sufficiency challenges are the
same for direct and circumstantial evidence cases. Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986). 
B.      Attempted Sexual Assault
          As to the conviction for attempted sexual assault, appellant contends, in his
first two points of error that the evidence was legally and factually insufficient to
prove that he had the specific intent to sexually assault Duffy.
          1.       The Offense of Attempted Sexual Assault
          A person commits sexual assault if he intentionally or knowingly (1) causes the
penetration of the anus or sexual organ of another person by any means, without that
persons consent; (2) causes the penetration of the mouth of another person by the
sexual organ of the actor, without that person’s consent; or (3) causes the sexual
organ of another person, without that persons consent, to contact or to penetrate the
mouth, anus, or sexual organ of another person, including the actor. Tex. Pen. Code
Ann. § 22.011(a)(1) (Vernon Supp. 2004–2005). A person commits the offense of
attempted sexual assault if, with specific intent to commit sexual assault, he does an
act amounting to more than mere preparation that tends but fails to effect the
commission of sexual assault. Tex. Pen. Code Ann. §§ 15.01(a), 22.01(a)(1)
(Vernon 2003 & Supp. 2004–05); see Moreno v. State, 872 S.W.2d 1, 3 (Tex.
App—Houston [1st Dist.] 1993, no pet.). The “specific intent” element means that
the accused must intend to bring about the desired result. See Flanagan v. State, 675
S.W.2d 734, 741 (Tex. Crim. App. 1982). 
          2.       Legal Sufficiency of the Evidence to Prove Specific Intent 
          Appellant contends that legally insufficient evidence was presented from which
the jury could have reasonably inferred that he possessed the requisite specific intent
to sexually assault Duffy. We disagree. 
          A person’s intent to commit an offense generally must be established by
circumstantial evidence and may be inferred from the person’s acts, words, and
conduct. Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); see
Lindsey v. State, 764 S.W.2d 376, 378 (Tex. App.—Texarkana 1989, no pet.)
(involving intent to commit sexual assault when charged offense was attempted
sexual assault). Duffy testified that appellant’s demeanor and conduct at the bar had
made her feel uncomfortable.


 When appellant returned to the bar the second time,
he followed Duffy to the back area of the bar, where Duffy had gone to get more beer. 
Appellant asked Duffy what she was doing and where the “other guy” was, referring
to Garcia. 
          Garcia also testified that he remembered appellant being at the bar. Garcia
recalled that appellant was “just not acting right” and was “kind of weird.” Garcia
stated that appellant was “just hanging around” and was “asking questions.” Duffy
and Garcia each testified that appellant had to be asked more than once to leave the
bar at closing time. 
          Duffy also provided the jury with a detailed account of her attack by appellant. 
She testified that, after she arrived home, appellant grabbed her from behind, dragged
her, threw her down, and threatened to cut her throat, if she was not quiet. Duffy
gave appellant her keys and purse and told appellant that there was money in her
purse. Rather than leaving with Duffy’s purse, appellant hesitated, set the purse
down, and forcibly dragged Duffy to the back of Price’s home, which appeared to be
vacant. Appellant then threw Duffy to the ground, punched her in the head, again
threatened to cut her throat, and grabbed Duffy’s breast twice. When Duffy resumed
screaming, appellant choked her and told her that he would allow her to breathe if she
would stop screaming. Only when Price came out of his house and yelled did
appellant stop his assault on Duffy and run away. Price testified that Duffy’s blouse
had been torn open, exposing her bra.
          Appellant contends that the evidence showing that he grabbed Duffy from
behind, dragged her to back of Price’s house, shoved her to the ground, and grabbed
her breast is legally insufficient evidence to establish that he intended to sexually
assault Duffy. Appellant first contends that the female breast is not a sexual organ
within the definition of applicable Penal Code section. Appellant asserts that it
follows that Duffy’s testimony that he grabbed her breast twice cannot serve to
support a finding that appellant had the intent to sexually assault Duffy. Although
appellant is correct that the female breast is not a sexual organ within the context of
the sexual assault statute, appellant’s conduct in twice grabbing Duffy’s breast was
overtly sexual. It is common knowledge that, in our society, the female breast is
associated with sexuality and sexual arousal. 
          Appellant also points out that the State presented no evidence that he (1)
touched Duffy’s genital area, (2) removed his own clothing, (3) removed or attempted
to remove Duffy’s clothing, or (4) verbally indicated that he wanted to engage in
sexual intercourse with Duffy. Appellant cites numerous attempted-sexual-assault
cases in which such evidence was presented to show a defendant’s intent to commit
sexual assault. Appellant is correct that many attempted-sexual-assault cases in
which a conviction has been upheld on appeal contain such facts. But it does not
necessarily follow that the lack of such evidence makes the evidence in this case
legally insufficient to support the finding of intent. See Allen v. State, 245 S.W.2d
707, 708 (Tex. Crim. App. 1952) (holding that evidence was sufficient to support
burglary-with-intent-to-commit rape conviction even though defendant made no
statements to victim of sexual nature); Moreno, 872 S.W.2d at 3 (concluding that lack
of physical contact between defendant and victim does not negate intent to commit
aggravated sexual assault); Walker v. State, 859 S.W.2d 566, 569 (Tex. App.—Waco
1993, pet. ref’d) (affirming attempted sexual-assault-conviction, noting that sexual
assault does not require exposure of defendant’s genitals). In sum, the criminal
attempt statute does not require that every act short of actual commission be
accomplished in order for a defendant to be convicted of an attempted offense. See
Lindsey, 764 S.W.2d at 378 (concluding that failure to complete act of sexual assault
does not negate defendant’s intent). 
          The sufficiency of the evidence is determined from the cumulative effect of all
the evidence; each fact in isolation need not establish the guilt of the accused. See
Alexander v. State, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). Here, the
following is particularly probative of appellant’s intent to sexually assault Duffy: (1)
appellant’s unusual behavior at the bar, i.e., appellant’s staring at Duffy, appellant’s
following Duffy to the back when she went to get more beer, appellant’s asking
questions, and Garcia’s assessment of Duffy as acting strange; (2) appellant’s failure
to take Duffy’s purse containing money and leave when given the opportunity; (3)
appellant’s act of then dragging Duffy behind what appeared to be a vacant house; (4)
appellant’s use of threats and violence against Duffy to subjugate her; (5) the overtly
sexual act by appellant of twice grabbing Duffy’s breast; and (6) Duffy’s torn blouse,
leaving her bra exposed. 
          From this evidence, a rational jury could infer that appellant intended to
sexually assault Duffy and that he did an act amounting to more than mere
preparation that tended, but failed, to effect the commission of sexual assault. 
Viewing the evidence in the light most favorable to the verdict, we hold that the
evidence is legally sufficient to support appellant’s conviction for attempted sexual
assault.
          We overrule appellant’s first point of error as it relates to the attempted-sexual-assault offense.
          3.       Factual Sufficiency of the Evidence 
          In his second point of error relating to the conviction of attempted sexual
assault, appellant contends that the evidence is factually insufficient because the
testimony of the witnesses, particularly that of Duffy and Garcia, is weak and
contradictory. Appellant contends that Duffy’s testimony conflicts with Garcia’s with
respect to how they decided to share a ride home on the night of the assault. 
Appellant further contends that the evidence suggests that it was impossible for
appellant to hide in the bed of Garcia’s truck to travel to Duffy’s house, as suggested
by the State at trial. 
          Appellant also cites differing testimony regarding whether it was Duffy or
Garcia who asked appellant to leave the bar. Furthermore, appellant points out that
Garcia testified that appellant kept asking questions, while Duffy testified that
appellant simply sat in the bar. Appellant also points out that, though Duffy said that
there was never a time when she could have gotten away from appellant during the
attack, Price testified that he saw appellant and Duffy standing in front of each other
for 30 seconds. Appellant posits that this was a time during which Duffy could have
escaped.
          None of these facts definitively favor the verdict one way or another. Rather,
they bear on the credibility of the witnesses and whose testimony, if any, should be
given more weight than the other. It is elemental that a jury’s decision is not
manifestly unjust merely because the jury resolved conflicting views of evidence in
favor of the State. Cain, 958 S.W.2d at 410. It was the jury’s role as fact finder to
resolve any discrepancies or inconsistencies in the evidence, to determine the
credibility and weight to be given the evidence, and to draw reasonable inferences
from the evidence. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979);
Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). Concomitantly, the
jury may believe or disbelieve all or part of any witness’s testimony. Jones v. State,
984 S.W.2d 254, 258 (Tex. Crim. App. 1998). 
          The inconsistencies cited by appellant were all before the jury, and such
inconsistencies were for the jurors to resolve. The jury could have reasonably
determined that any perceived inconsistencies in the witnesses’ testimony about how
Duffy and Garcia decided to share a ride, who asked appellant to leave the bar,
whether appellant asked questions while at the bar, or whether Duffy was ever in a
position to flee during the attack did not create a reasonable doubt about whether
appellant committed attempted sexual assault. The same can be said regarding the
evidence supporting the State’s suggested theory that appellant had hitched a ride in
the back of Garcia’s truck. 
          Appellant has not demonstrated that the evidence is so weak that his conviction
is clearly wrong and manifestly unjust or that, based on the contrary evidence, the
beyond-a-reasonable-doubt burden of proof could not have been met. After
reviewing it in a neutral light, we hold that the evidence is factually sufficient to
support appellant’s conviction for attempted sexual assault.
          We overrule appellant’s second point of error as to that offense.
C.      Kidnapping 
          Appellant contends in his first and second points of error regarding the
kidnapping conviction that the evidence was legally and factually insufficient to
support his conviction. 
          1.       The Offense of Kidnapping
          A person commits the offense of kidnapping if he intentionally or knowingly
abducts another person. Tex. Pen. Code Ann. § 20.03 (Vernon 2003). The Penal
Code defines “abduct” as
          “restrain[t of] a person with intent to prevent his liberation by:
(A) secreting or holding him in a place where he is not likely to be
found; or
                    (B) using or threatening to use deadly force.
Id. § 20.01(2)(A)–(B) (Vernon Supp. 2004–2005). The Texas Court of Criminal
Appeals has explained that secretion and the use of deadly force are part of the mens
rea element of abduction, rather than the actus reus. Mason v. State, 905 S.W.2d
570, 575 (Tex. Crim. App. 1995); see also Brimage v. State, 918 S.W.2d 466, 475–76
(Tex. Crim. App. 1994). The sole “act” involved in a kidnapping is “restraint.” 
Mason, 905 S.W.2d at 575. The Penal Code further defines “restrain” as meaning “to
restrict a person’s movements without consent, so as to interfere substantially with
[her] liberty, by moving [her] from one place to another or by confining [her].” Tex.
Pen. Code Ann. § 20.01(1). Restraint is “without consent” if it is accomplished by
force, intimidation, or deception. Id. 20.01(1)(A). 
          2.       Legal sufficiency 
          In his first point of error relating to the kidnapping conviction, appellant argues
that the evidence is legally insufficient to support a conviction for the completed
offense of kidnapping as opposed to attempted kidnapping. Appellant first contends
that he did not restrain Duffy. We disagree. 
          A reasonable jury in this case could have inferred that appellant restricted
Duffy’s movements without her consent, so as to interfere substantially with her
liberty. See Tex. Pen. Code Ann. § 20.01(1). It is not necessary for appellant to
have taken Duffy a certain distance or to have held her for a specific amount of time
before he could be convicted of kidnapping. Hines v. State, 75 S.W.3d 444, 447
(Tex. Crim. App. 2002). The evidence showed that appellant “restrained” Duffy by
dragging her behind Price’s house, where he forced her to lie face down in the grass,
while he was on top of her, and where he punched her in the head and choked her. 
Duffy’s restraint began when appellant grabbed her from behind near the front of her
house and ended when Price frightened appellant away. Thus, the only remaining
issue is whether appellant had the specific intent to prevent Duffy’s liberation by
secreting her in a place where she was not likely to be found or using or threatening
to use deadly force. See Mason, 905 S.W.2d at 575. Appellant also challenges the
legal sufficiency of the evidence to support the intent element.
          As stated, the requirement of preventing a victim’s liberation by (1) secreting
her where she will likely not be found or (2) using or threatening to use deadly force
is a part of the mens rea of the offense, not the actus reus. Brimage, 918 S.W.2d at
475. Thus, if the actor intended at any time during the restraint to secrete or to hold
the victim in a place where she is not likely to be found, the offense is complete. 
Santellan v. State, 939 S.W.2d 155, 162 (Tex. Crim. App. 1997); Mason, 905 S.W.2d
at 575. Appellant appears to argue that he cannot be guilty of kidnapping because he
did not succeed in depriving Duffy of her liberation by secreting her or by using the
threat of deadly force. However, the relevant inquiry is whether appellant intended
to prevent Duffy’s liberation either (1) by secreting her in a place where she was not
likely to be found or (2) by threatening to use deadly force. See Tex. Pen. Code
Ann. § 20.01(2)(A)–(B). Conversely, the relevant inquiry is not whether appellant
actually accomplished his purpose of depriving her of her liberty by either means. 
King v. State, 961 S.W.2d 691, 694 (Tex. App.—Austin 1998, pet. ref’d). 
          Here, the evidence showed that, at 3:00 a.m., appellant forcibly restrained
Duffy, dragging her from her the front of her house to the back of Price’s home,
which appeared not to be occupied. While restraining her, appellant used verbal and
physical means to quiet Duffy. From such evidence, a jury could have reasonably
inferred that appellant had the specific intent to secrete Duffy in a place where she
was not likely to be found, i.e., behind a “vacant” house in the middle of the night,
for the purpose of sexually assaulting her. 
          The evidence also showed that appellant intended to prevent Duffy’s liberation
by threatening to use deadly force. Appellant threatened to cut Duffy’s throat if she
did not stop screaming. A reasonable inference from such evidence is that appellant
used the threat to intimidate Duffy and to make her compliant with his demands for
silence to successfully effectuate his restraint of her. From such evidence, a jury
could have reasonably inferred that appellant intended to deprive Duffy of her liberty
by using the threat of deadly force. 
          Viewing it in a light most favorable to the verdict, we hold that the evidence 
was legally sufficient to support appellant’s kidnapping conviction. 
          We overrule appellant’s first point of error as to the kidnapping offense.
          3.       Factual Sufficiency
          In his second point of error relating to the kidnapping conviction, appellant
asserts that the evidence is factually insufficient. 
          Appellant contends that the evidence supports the inference that he did not
intend to secrete Duffy in a place where she was not likely to be found “because no
person would consider the area to be such a place.” Appellant points out that a car
was parked in Duffy’s driveway and that a there was a trailer park across from
Duffy’s house. Appellant also contends that Price’s yard was not remote “in light of
Ms. Duffy’s ability to scream.” Even assuming that appellant’s contention is correct,
the State presented evidence that appellant acted to silence Duffy to prevent
detection. The evidence showed that appellant attempted to silence Duffy by
threatening repeatedly to cut her throat and by choking her. Such evidence is
evidence from which the jury could have inferred that appellant intended to secrete
Duffy in a place where she was not likely to be found. It is reasonable to assume that,
if she had not screamed, Duffy’s neighbors likely would not have known that she was
being attacked in Price’s back yard in the middle of the night. The fact that appellant
was not successful in secreting her is not determinative. 
          Appellant further contends that he did not expect his threats to succeed in
preventing Duffy’s liberation because she continued to scream after he had threatened
to cut her throat. Specifically, appellant asserts that, because Duffy continued to
scream after being threatened with deadly force, “she wasn’t buying that threat.” 
Appellant points out that Duffy admitted on cross-examination that she concluded
that appellant did not have a knife after appellant grabbed her breast. Appellant
argues that he did not have the requisite culpable state of mind to prevent Duffy’s
liberation by threatening the use of deadly force because he did not believe that Duffy
was affected by the threat. 
          The evidence showed that appellant repeatedly threatened to cut Duffy’s throat,
even though Duffy continued to scream. The evidence also showed that appellant’s
threats succeeded in silencing Duffy, but that Duffy resumed screaming when
appellant grabbed her breast. At that point, appellant began choking Duffy and told
her that he would allow her to breathe if she stopped screaming. However,
appellant’s choking of Duffy does not necessarily negate his intent to prevent Duffy’s
liberation when he threatened to cut her throat. Regardless of whether appellant
believed that his threats to cut Duffy’s throat had succeeded, the evidence supports
an inference that appellant intended, at that point, for such threats to effectuate a
deprivation of Duffy’s liberty. 
          Appellant has not demonstrated that the evidence is so weak that his
kidnapping conviction is clearly wrong and manifestly unjust or that, based on the
contrary evidence, the beyond-a-reasonable-doubt burden of proof could not have
been met. After reviewing it in a neutral light, we hold that the evidence is factually
sufficient to support appellant’s kidnapping conviction. 
          We overrule appellant’s second point of error relating to the kidnapping
offense.
DENIAL OF MOTION FOR MISTRIAL
          In his third point of error, as to each offense, appellant contends that the trial
court abused its discretion in denying his motion for mistrial. 
          1.       Standard and Scope of Review
          The standard of review for a trial court’s denial of a motion for mistrial is abuse
of discretion. Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); Ladd v.
State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). We uphold the trial court’s ruling
if that ruling was within the zone of reasonable disagreement. Wead, 129 S.W.3d at
129; Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on
rehearing).
          Mistrial is an extreme remedy that is appropriate only when the objectionable
event is so emotionally inflammatory that a curative instruction is not likely to
prevent the jury from being unfairly prejudiced against the defendant. See Bauder v.
State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). To determine whether a given
error necessitates a mistrial, the reviewing court examines the particular facts of the
case. Wead, 129 S.W.3d at 129.
          2.       No Abuse of Discretion in Denying Motion for Mistrial
          On the first day of trial, the defense filed two motions. The first was a “Theus
motion,”


 asking the court to allow appellant to testify, free from impeachment, about
his prior convictions of kidnapping in 1985, robbery in 1985, and aggravated robbery
in 1990. The second was a motion in limine, requesting the court to exclude certain
evidence pertaining to past crimes committed by appellant, specifically “any
reference, either directly or indirectly, to the fact that the defendant has a criminal
record, has been in jail/prison, or was on parole at the time of the offense.” That day,
the court denied the Theus motion, finding that the probative value of the convictions
outweighed any prejudicial effect. No ruling was made on the motion in limine.
          The State’s last witness, Officer Carlson, who apprehended appellant, testified
as follows during the defense’s cross-examination:
          Q. [Defense counsel]: Once he surrendered, did he give you any trouble?
          A. [Officer Carlson]: No, sir, he did not.
          Q. Was he belligerent?
A. No, sir. He apologized for running. He was scared because he was on
parole.

          [Defense counsel]: Well, Your Honor, I’m going to object to that.
          The Court: Sustained.
          [Defense counsel]: Ask the jury to disregard, Your Honor.
The Court: Ladies and gentlemen, disregard the last statement by the police
officer.

          [Defense counsel]: Move for mistrial.
          The Court: Denied at this time.
(Emphasis added.) After the State had rested, defense counsel re-urged the motion
for mistrial, citing an agreement between the defense and the prosecution. The
agreement provided that no witnesses would testify about appellant’s criminal record. 
Defense counsel explained that he had not previously “urged” the motion in limine
or obtained a ruling on it because of the agreement. The court again denied the
motion for mistrial. 
          Appellant argues that the testimony regarding appellant’s parole was precisely
what the defense sought to have excluded in its motion in limine. However, the
defense readily admitted that it neither urged nor obtained a ruling on the motion in
limine. In any event, an instruction to disregard is generally sufficient to cure error
when evidence of an extraneous offense is placed before the jury in violation of a
motion in limine. See Barney v. State, 698 S.W.2d 114, 125 (Tex. Crim. App. 1985). 
          Appellant further contends that the instruction to disregard did not cure the
harm and that the denial of the motion for mistrial was an abuse of discretion. 
Appellant specifically contends that the reference to appellant’s previous criminal
record influenced the jury’s deliberations.
          It is an established principle that a defendant should not be tried for collateral
crimes or for generally being a criminal. Williams v. State, 662 S.W.2d 344, 346
(Tex. Crim. App. 1983). But a witness’s inadvertent reference to an extraneous
offense is generally cured by a prompt instruction to disregard. Rojas v. State, 986
S.W.2d 241, 250 (Tex. Crim. App. 1998). An exception exists when the testimony
is clearly calculated to inflame the minds of the jury or was of such damning character
as to suggest that it would be impossible to reverse the harmful impression from the
juror’s minds. Id. 
          From the record, Officer Carlson’s reference to appellant’s parole appears to
have been inadvertent and not clearly calculated to inflame the minds of the jurors. 
The statement was not solicited by the prosecution, but was made during the
defense’s cross-examination. The unresponsive portion of Officer Carlson’s answer
did not divulge for what crimes appellant was on parole nor did the jury learn any
details about the previous offenses. The trial court immediately instructed the jury
to disregard the officer’s statement, and no further mention was made of appellant’s
offenses to the jury. Absent any evidence to the contrary, we presume that the jury
followed the instructions given by the trial judge. See Herrera v. State, 11 S.W.3d
412, 415–16 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d). We hold that the trial
court did not abuse its discretion in denying appellant’s motion for mistrial. 
          We overrule appellant’s third point of error relating to both offenses. Conclusion
          We affirm the judgments of the trial court.




                                                   Laura Carter Higley
                                                   Justice


Panel consists of Justices Nuchia, Jennings, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).